[Crim. No. 249. Fourth Appellate District.—May 31, 1933.]

THE PEOPLE, Respondent, v. LOUIS FRANK et al., Appellants.

William I. O'Shaughnessy for Appellant Louis Frank.

Anderson & Anderson for Appellant Ralph Sheldon.

Clifford Thoms for Appellant Jesse Orsatti.

U. S. Webb, Attorney-General, William F. Cleary, Deputy Attorney-General, Buron Fitts, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondent.

ANDREWS, J., *pro tem.*—Defendants Ralph Sheldon, Jesse Orsatti, Louis Frank and certain others not involved in this appeal were indicted on the nineteenth day of January, 1932, for kidnaping. Thereafter they were arraigned,

entered pleas of not guilty, and the case continued to January 25, 1932, at 2 o'clock P. M. On January 25th the case was called, all defendants were present in person and with counsel, further pleas were entered and the cause continued to January 26, 1932, at 10 o'clock A. M., when all defendants were again present with counsel. An application was made on behalf of the People to take the testimony of Tadashi Wakabayashi. This application was resisted by defendants, but after a hearing the court made an order for the taking of the deposition at 6 o'clock P. M. on January 26, 1932. The case was continued to February 1, 1932, and a trial by jury was commenced on that date which lasted until the fourth day of March, 1932, resulting in verdicts of guilty as to defendants Sheldon, Orsatti and Frank. Motions were made by each defendant for a new trial. These were denied and judgment as to each defendant was entered committing each to the state prison. From the orders denying new trials and from the judgments these defendants have brought these appeals.

■ (1) The deposition of Tadashi Wakabayashi was received in evidence over the objection of all defendants. (a) Was the notice a sufficient compliance with section 1338 of the Penal Code which provides that the application must be made upon three days' notice? The procedure used by the state to bring on the hearing was an order to show cause, returnable forthwith, and served upon defendants the same day it was issued. Penal Code, section 1336, provides for taking a deposition in certain emergencies any of which might require a notice of less than three days, and although no provision is made for shortening time because of the exigencies of a given case, if the provision for notice should be regarded as a procedural regulation and not necessarily involving substantive right it would come within that classification of directory regulation which might be varied by a special order of court upon proper showing. The granting of the order to show cause, as was done in this proceeding fixing the time at less than three days, would in effect be an order shortening time.

The application having been made at a session of court where the case was pending not for any limited purpose requiring special notice, and all parties being present, any motion could be made involving any feature of the case

without notice as can be done in any ' proceeding in court where the cause is before the court for whatever action that may be properly taken. The provision in this section reads the same as the section which provides for taking depositions of witnesses residing out of the state. Whether it should be held that time may be shortened, or that the order made when all parties are before the court, which is the purpose of giving the notice, it is undoubtedly true that the provision is one which may be waived. The three-day provision was mandatory in form as is the case in every code section, civil and criminal, which provide for taking depositions and may be said to be intended for any purpose which it would serve. The statute does not regulate what should be the limit as to the time to be fixed for taking the deposition, the three-day notice is for the hearing.

On the hearing of the application defendants objected to the order, not because the sickness of the witness did not require it, but upon the ground that the shortness of the notice afforded no time for preparation. Nevertheless, the deposition was taken under order of court with all defendants present, except the defendant Frank who had the opportunity to be present had he so desired, and the witness was cross-examined at length by counsel for defendants. In *People* v. *Feigelman,* 65 Cal. App. 319 [223 Pac. 579], this was held to constitute a waiver of notice. Penal Code, section 1404, provides that a departure from the form or mode prescribed in respect to any proceeding, or an error or mistake therein, does not render it invalid unless it has actually prejudiced the defendant or tended to his prejudice in respect to a substantial right. The prejudice here referred to would have relation to the ability of the defendants to resist the making of the order, and possibly, to whatever failure to protect their rights during the taking of the deposition could be shown to have resulted from the shortness of the notice, and would have no relation to the fact of the taking, or the effect of the deposition or its introduction in evidence.

Section 1345 of the Penal Code provides that upon the reading of the deposition on the trial objections to questions and answers may be made as if the witness were being examined orally in court. This provision might to some extent limit the injury which would result from the taking of the deposition on the short time notice. So far as the objection

as to notice is concerned the deposition was receivable in evidence.

■ (b) Was the deposition required to be read to the witness and signed by him? Penal Code, section 1343, requires that the testimony must be reduced to writing and authenticated in the same manner as the testimony of a witness taken in support of an information. This deposition was not read to the witness and was not signed by him. To determine what is meant in the statute by the words "taken in support of an information", it must be ascertained what are the provisions relating to testimony upon which an information depends. Section 806 of the Penal Code, under the general heading "The Information", says: "The complaint is the allegation in writing made to a court or magistrate that a person has been guilty of some designated offense." Penal Code, section 811, under the general heading "The Warrant of Arrest", provides: "When an information is laid before a magistrate . . . he must examine on oath the informant or prosecutor, and any witnesses he may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them." Penal Code, section 864, a part of the chapter relating to preliminary examination before a magistrate, provides: "At the examination, the magistrate must first read to the defendant the depositions of the witnesses examined on taking the information." Penal Code, section 869, being part of the same chapter, provides: "The testimony of each witness in cases of homicide must be reduced to writing, as a deposition, by the magistrate, or under his direction, and in other cases upon the demand of the prosecuting attorney, or the defendant, or his counsel. The magistrate before whom the examination is had may, in his discretion, order the testimony and proceedings to be taken down in shorthand in all examinations herein mentioned, and for that purpose he may appoint a shorthand reporter. The deposition or testimony of the witness must be authenticated in the following form: . . . Second—*It must contain the questions put to the witness and his answers thereto*, each answer being distinctly read to him as it is taken down, and being corrected or added to until it conforms to what he declares is the truth, except in cases where the testimony is taken down in shorthand, the answer or answers of the witness need not be read to him.

. . . Fourth—*The deposition must be signed by the witness,* . . . except in cases where the deposition is taken down in shorthand, it need not be signed by the witness. Fifth— *The reporter shall,* . . . transcribe into longhand writing, his said shorthand notes, . . . and certify and file both said original and copy with the county clerk. . . . '' Penal Code, section 870, provides that, ''The magistrate . . . must keep the depositions taken on the information or the examination, until they are returned to the proper court; . . . the magistrate must order a transcript of the depositions taken on the information, or on the examination, to be immediately furnished said defendant or his attorney, after the commitment of said defendant. . . . '' Penal Code, section 809, reads: ''When a defendant has been examined and committed, as provided in section 872 of this code, it shall be the duty of the district attorney, within fifteen days thereafter, to file in the superior court of the county in which the offense is triable an information charging the defendant with such offense. . . . It may charge the offense, or offenses, named in the order of commitment, or any offense, or offenses, shown by the evidence taken before the magistrate to have been committed.''

The words ''taken in support of an information'' as used in section 1343 have reference to the testimony taken at the preliminary examination which the district attorney must use as a basis for the formulation of the information. If the depositions taken at the time the complaint is first made for the warrant of arrest may become a part of the evidence used in such examination under section 864, it is plain that testimony taken in shorthand under section 869 becomes part of the evidence used in support of the information. In actual practice such shorthand evidence becomes, it is believed, the principal and practically the only evidence used for the purpose. Depositions authenticated in either form would answer the requirements of section 1343. The deposition, therefore, was certified in the form which entitled it to be received in evidence.

■ (c) Objection was further made by defendants to this deposition upon the ground that its taking constituted the beginning of the trial of the case and that ten days had not elapsed from the service upon them of the copy of the testimony taken before the grand jury as provided in Penal

Code, section 925. Penal Code, section 1093, regulates the proceedings which should be had on the trial of the case. It provides for the reading of the information to the jury, the introduction of evidence by the state and by defendants, the argument to the jury and the charge of the judge. Depositions are taken in preparation for the trial and are offered and received in evidence. It is true that proceedings for the taking and in the taking of depositions are part of the proceedings in the case regulated by the rules of procedure governing the general rights of a defendant and there is analogy between this proceeding and the trial. The word "trial", however, as used in the code provision, must be held to have a technical reference to the trial before the jury which is also indicated by the wording of section 1345.

■ (2) Rulings of the court assigned as error relate to: (a) the admission of testimony concerning the stolen auto; (b) the purchase and delivery of a radio; (c) pistols being carried in a car; (d) conversations between Doolen and Wagner; (e) the burning of stolen clothing and a house; (f) the testimony of Wagner; (g) the testimony of Slaughter, Schack, Coit and Mittwer in connection with the Long Beach occurrence.

While the objections to these different elements of the testimony do not rest upon identical grounds, running strongly through them is the common ground that they have no possible relation to the issues of this case and are introduced by the state to create an atmosphere of general criminality on the part of defendants of crimes unrelated in character to the crime here involved and must have influenced the jury prejudicially against the defendants. An examination of the record as to each and all of these assignments of error indicates that the evidence had a fair tendency in every instance to show the relation existing between the defendants, to corroborate the testimony of the accomplice Doolen, and to support the theory of a conspiracy.

■ (3) Transcript of testimony given by the witness Tadashi Wakabayashi in the trial which grew out of the Long Beach shooting incident was offered in evidence. This evidence involved some of the same issues connected with the present case. The objection of the state to its admission was sustained. Penal Code, section 1102, provides that the rules of evidence in civil actions are applicable also to criminal

actions except as otherwise provided in this code. Subdivision 8 of section 1870 of the Code of Civil Procedure provides that the testimony of a witness deceased, given in a former action between the same parties relating to the same matter, may be given upon trial. Penal Code, section 686, subdivision 3, provides that a defendant in a criminal action is entitled to be confronted with the witnesses against him in the presence of the court, except, testimony taken at the preliminary examination, and testimony of a witness taken conditionally, in which cases the testimony may be read upon proof that the witness is dead. This section seems to be a regulation upon the subject of the introduction of testimony given in former proceedings, the subject being one where the rights of a defendant in a criminal action would preclude the use of testimony in former actions unless specifically authorized by statute, and the legislature having undertaken to provide when and how such testimony may be used in a criminal case, the statute will be presumed to be comprehensive and exclusive and constitute the exception made in section 1102 that where the provision is made in the Penal Code, the rules of evidence applicable to civil actions do not apply.

(4) Defendants complain of certain rulings of the trial court denying privilege of *voir dire* examination of the witness Doolen and of his cross-examination as to the mention of a Jane Doe in the indictment, and as to his financial condition, and because the cross-examination of the witness Clara Frank was permitted. The cross-examination which was allowed demonstrated that examination on *voir dire* would have availed nothing and at most it was regulation of the order of proof. The other regulations seems to have been fairly within the limitations made necessary by the issues of the case and do not constitute reversible error.

(5) The conduct of the district attorney in the trial is assigned as error. It is contended that he made use of the word "mob" in referring to defendants; that he used the term "prison house", referring to the place where the persons who were kidnaped were detained; that in his argument to the jury he made reference to knowledge which he possessed but which had not been introduced by his testimony in the case, and that generally he sought to create a sentiment of hostility toward defendants unwarranted by

his duty as prosecutor. In the light of the record the indictment against him is without force. In the modern handling of criminal prosecutions, where the defense is often vigorous, resourceful and evasive, the district attorney must meet with adequate diligence and determination the methods used to escape conviction to the end that those guilty of serious crimes may not go free to continue to prey upon society. The use of the words "mob" and "prison house" were not inappropriate terms under the circumstances disclosed by the evidence and while he had no right to comment upon knowledge possessed by himself, not put in evidence, the offending comment had a basis in the testimony of a witness who testified to the presence of the district attorney on the occasion. His reference to the incident expressed the wish that the jury might have been present as he was and have witnessed the respectable character of the place and have seen what there occurred, all of which had been testified to by a witness then and there present. While the remarks should not have been made, a review of the evidence neither indicates it could have influenced the result of this trial which lasted a month, nor discloses any miscarriage of justice, and the error cannot be held to be reversible.

■ (6) Defendants complain of the conduct of the judge in his treatment of counsel for defendants and that his favorable attitude toward the prosecution was such as to influence the jury and result in error. The outstanding incident of these objections was an order adjudging one of the attorneys in contempt and the comments and orders made in connection with that incident. The record shows that the attorneys for defendants were all making frequent objections and taking frequent exceptions to the conduct of the case by the court and to the actions of the district attorney and that one of the attorneys representing a defendant was addressing the court when the particular attorney who was finally adjudged to be in contempt undertook to interrupt the proceedings with an objection. He was informed by the court that the objection was not in order but that it would be heard at the conclusion of the remarks of counsel then in progress. Notwithstanding this notice the attorney persisted in being heard and the court again cautioned him that he was obstructing the proceedings and ordered him to desist. The attorney still interrupted and the court notified

him that his conduct would be regarded as contempt of court if persisted in further. In defiance of this warning he insisted upon entering an objection which the court refused to hear and made an order adjudging him in contempt. Notwithstanding the order the attorney insisted upon interposing the objection and the court instructed the bailiff to take him into custody and prevent further interruption. Notwithstanding the efforts of the bailiff the attorney insisted upon his right to interrupt and make his objection and the court ordered him taken from the courtroom, which was done. Thereupon the court offered to appoint the public defender to represent the defendant whose counsel was under arrest. Defendant refused to have the appointment made. Thereupon the judge sent word to return the attorney into court and the bailiff returned with a reply from the attorney that he would not come into court unless permitted to make his objection. The court permitted him to return to the courtroom and the attorney immediately made the objection, which consisted of an exception to some conduct of the district attorney earlier in the proceedings. The court then resumed the hearing of the attorney who had been interrupted. The nature of the objection was such that it could have been effectively made at the conclusion of the argument of counsel.

The orderly conduct of a case is by law made the duty and responsibility of the judge. Attorneys are officers of the court deriving their right to practice their profession from that fact. The relation between the court and counsel is generally one of mutual respect and understanding. Only occasionally does it develop that some member of the bar, whether influenced by his fee or by an ambition to attain a certain kind of reputation, or from on overzealous desire to serve his client, or from failure to appreciate and observe the obligation imposed upon him by law as an officer of the court, insists upon the right to make unseemly interruptions of the proceedings and refuses to observe the reasonable regulations imposed by the court. Under such circumstances the duty of the court arises from necessity to make such an order as will enable it to continue its business. So far as the record discloses the order of commitment made in this instance was justified and the error of the court, if any, was in failing to enforce the order. If that course had

resulted in the defendant by his own choice being unrepresented by counsel, and if the whole incident had resulted in possible prejudice and error, it would be error of which defendant could not complain, it having resulted from the misconduct of himself and of his own counsel.

The record indicates that the court was careful on all occasions to give full hearing and attention to all the objections and contentions of defendant and that the trial was conducted without any show of favoritism or prejudice. The administration of law is not an exact science, it is administered by human instrumentality with those weaknesses and limitations inherent in our human nature. The criminal law is everywhere hedged about with exceedingly careful provisions regarding the rights of those charged with crime. Defendants rarely appreciate how their rights are guarded in the administration of justice. Defenses occasionally take on the method of persistent technical objections not necessarily contributing to success, as it is observed that men of the profession who are quiet, fair and professional in behavior, seem to have equal success. Most counsel recognize that their standing as officers of the court outweighs other considerations and conform as of course to the orders of the court regulating the trial. There is nothing in the record indicating error arising from misconduct in the general attitude of the judge.

(7) All defendants insist that the attempt at corroboration of the testimony of the accomplice Doolen does not measure up to the statutory requirement and therefore no conviction can be sustained arising out of the testimony as a whole. Penal Code, section 1111, relating to this subject, has been given careful attention in the briefs of defendants wherein the construction placed upon that section by the courts of last resort of this state have been brought to the attention of this court. In the case against Sheldon, in addition to the testimony of the accomplice and evidence tending to corroborate the same, the deposition of the witness Tadashi Wakabayashi furnishes evidence of identification and of complicity in the crime, which, having been apparently believed and acted upon by the jury, takes the question of corroboration out of consideration in his case. Likewise in the case against Orsatti the facts surrounding his confession passed upon by the court for the purpose of receiving

the same in evidence and presumably acted upon by the jury in arriving at its verdict makes it unnecessary to give the question of corroboration attention as to him. In this connection it is held that the record discloses that the evidence relating to the circumstances under which the confession of Orsatti was made leaves the question not one of law to be here determined as such, but a question of fact properly to be passed upon by both judge and jury in turn.

As to defendant Frank, the question of corroboration is presented. The evidence relied upon by the state is, (a) that soon after the crime was committed, proof of which exists without reference to the testimony of the accomplice, this defendant moved from Los Angeles to a town about twenty miles distant; (b) that either he or his wife obtained a postoffice box in still another town under an assumed name; (c) that he left the state by airplane with one Wagner, who had been wounded in the Long Beach affray; (d) that when arrested in Arizona he gave a false name and address; (e) that his wife wrote a letter to some person in Oregon, certain language in which gave rise to an inference of guilty knowledge; and (f) that in July, 1931, he attempted to obtain release of a car which was in custody of the police and which had been used in connection with the commission of the crime; (g) that when arrested for the crime he made no denial of guilt.

It is evident that in a city of more than a million inhabitants many people may have moved from one place to another at or about any particular time and that if obtaining a postoffice box under another name would in any degree be indicative of having committed a crime it could not be said to have relation to this particular crime. That he left the state with Wagner would be of no significance unless the fact that Wagner was a party to the crime for which defendant is on trial was known to Frank at the time as shown by testimony other than that of the accomplice. When arrested the fact that he gave a false name and address and denied identity, if leading to suspicion of some guilt, would not relate to any particular act. It appears from the testimony that at the time of his arrest he was notified it was upon the charge involved in this case and that he said nothing. Under some circumstances where one is confronted with a charge and fails to make denial, inference

may be drawn that his silence constitutes admission of the truth of the charge. The inference would be stronger or weaker according as the circumstances seemed to necessitate a response. When arrested, whether guilty or innocent, a denial would be of no avail. Without the testimony of the accomplice the corroborating evidence in no way tends to connect defendant Frank with the crime.

The judgments and orders appealed from are affirmed as to defendants Sheldon and Orsatti, and reversed as to defendant Frank and the case remanded for new trial.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 29, 1933.