[Crim. No. 3682.   In Bank.—January 24, 1934.]

THE PEOPLE, Respondent, v. DANIEL HARRIS, Appellant.

Alva S. Sherlock, Forrest H. Bailey, Hugh H. Donovan and Michael M. Dowling for Appellant.

U. S. Webb, Attorney-General, and Siebert L. Sefton, Deputy Attorney-General, for Respondent.

THOMPSON, J.—By an information filed by the district attorney of Contra Costa County the defendant was charged with the crime of murder, to which he interposed a plea of not guilty and also a plea of not guilty by reason of insanity. In three additional counts the defendant was charged with three prior convictions—one of forgery and two of burglary, to which he pleaded that he had been convicted as alleged. The jury returned a verdict of guilty of murder in the first degree, and also found defendant to be sane. From the judgment pronounced thereon the defendant prosecutes this appeal, as well as an appeal from an order denying his motion for a new trial. He urges as reasons for a reversal the following grounds: (1) That the defendant was not instructed concerning his rights as required by section 858 of the Penal Code prior to the preliminary hearing; (2) that the court erred in admitting photographs of the body of the deceased, which he says inflamed the minds of the jurors against him; (3) misconduct on the part of the district attorney; (4) that the

court erred in giving certain instructions and refusing other requested instructions.

■ We shall examine the claims of error in the order named. Section 858 of the Penal Code requires the magistrate "when the defendant is brought before" him "on a charge of having committed a public offense" to "immediately inform him of the charge against him, and of his right to the aid of counsel in every stage of the proceedings." There are several complete answers to appellant's suggestion. In the first place, the justice of the peace before whom the appellant was arraigned and before whom the preliminary hearing was had testified that he read the complaint to appellant, told him that he was entitled to time to procure counsel and to secure witnesses in his behalf; and to the processes of that court to compel the attendance of witnesses, and that when he had so instructed him the defendant indicated a willingness to then and there proceed with the preliminary hearing. During the course of the trial the testimony of appellant given at the preliminary hearing was introduced, and appellant assumes that inasmuch as the reporter's transcript does not include the admonition testified to by the magistrate that it could not have been given. We do not so read the record. It appears therefrom that the case was called and the defendant was asked his true name. And then follows the notation: "Defendant arraigned," succeeded by the question by the court: "Are you ready to proceed with the preliminary examination?" There is no doubt that under the heading "defendant arraigned" occurred just what the magistrate testified to upon the trial. Hence there is no inconsistency between his testimony and the record of the preliminary hearing. Appellant says, however, that the magistrate's testimony does not disclose that defendant was advised of "his right to the aid of counsel in every stage of the proceedings." It is perfectly manifest, however, that before the examination defendant was informed and had knowledge of his right to the aid of counsel in the proceeding and of his right to a continuance for the purpose of securing such assistance, but elected to proceed with the examination without counsel.

■ Another answer to appellant's contention is that he failed to move to set aside the information under the pro-

visions of section 995 of the Penal Code on the ground that he "had not been legally committed by a magistrate", but elected to plead and stand trial. Section 996 of the Penal Code reads: "If the motion to set aside the indictment or information is not made, the defendant is precluded from afterwards taking the objections mentioned in the last section." The authorities support the code section in all of its integrity. (*Ex parte Moan,* 65 Cal. 216 [3 Pac. 644]; *People* v. *Bawden,* 90 Cal. 195 [27 Pac. 204]; *In re Northcott,* 71 Cal. App. 281 [235 Pac. 458]; *In re Heinze,* 116 Cal. App. 286 [2 Pac. (2d) 561].) In the Northcott case it was said: "Said judgment (that of conviction) is not related to, nor is it dependent upon, the order of the committing magistrate holding the defendant to answer for trial, its foundation being in the evidence adduced at the trial and the verdict of the jury, and not in the proceedings occurring before the committing magistrate."

We therefore turn to examine the claim that the court erred in admitting into evidence certain photographs of the body of the deceased. They are not in the record, and were not mentioned by counsel in their application for the transcript. However, we fairly judge their nature from the testimony. It appears therefrom that on the morning of December 5, 1932, around the hour of 9 o'clock, the appellant went into the jewelry store of the deceased, from which place he stole several diamond rings, watches and other articles. A short time thereafter decedent's body was found in the store lying in a pool of blood. He had been struck on the head five times with some blunt instrument, each blow causing a fracture of the skull. In addition, his head had been completely severed from his body except for the spinal column. While admitting that he killed the deceased, the appellant swore that he entered the store after he had observed deceased leave the store, and that during his appropriation of the articles the deceased re-entered and endeavored to prevent the appellant from leaving, whereupon a struggle ensued. He testified that in the heat of the battle he struck deceased over the head with his closed knife and that later he opened the knife and cut the deceased, but denied that he had cut his throat all the way around. The pictures were taken and introduced for the purpose of showing the injuries to the head and that it was severed

except as already noted. They were therefore admissible as tending to establish the nature and character of the act of which appellant was guilty. (*People* v. *Elmore,* 167 Cal. 205–212 [138 Pac. 989]; *People* v. *Gomez,* 209 Cal. 296–300 [286 Pac. 998]; *People* v. *Burkhart,* 211 Cal. 726–732 [297 Pac. 11].)

█ The next assertion is that the district attorney was guilty of misconduct and appellant assigns three separate incidents as constituting this specification. During the course of the trial there was a stipulation that the defendant entered the premises of Mr. Whited (the deceased) on December 5, 1932, for the purpose of robbing the place and stole certain jewelry. Thereafter in offering designated pieces thereof in evidence the district attorney referred to "the stipulation of counsel that it was stolen by this defendant from the premises on the day that he was killed". The same wording was used three times without objection. On the fourth occasion the district attorney substituted the word "murdered" for "killed". Defense counsel interposed no objection, but interjected "Now, now, now," by way of warning to the district attorney that he considered the language objectionable. It is a familiar rule that counsel must object at the time of the asserted misconduct and give the trial court an opportunity to undo the harm if any has been done, in the absence of which he is foreclosed of raising the point upon appeal. Aside from this reason for holding the contention to be without merit, is the fact that in the present case the district attorney was merely identifying the day on which it had been stipulated the goods were stolen. While we are not disposed to approve of the method of identification generally, yet it was not in dispute that Mr. Whited had been killed, and hence no harm or injury could have resulted to defendant.

The next claim of misconduct is based upon a remark of the district attorney during a discussion concerning stipulations as to the testimony of some of the witnesses. Counsel for defendant had said they were willing to stipulate that certain of them would testify with respect to some of the articles having been stolen by defendant. They could not agree upon the testimony of one. During the remarks the district attorney observed that many of the witnesses had come from Los Angeles and if counsel had been seriously

disposed to save expense they could have notified him three days before, whereupon the following occurred:

Defense counsel: "We will save the expense of staying here."

Another defense lawyer: "We have made other offers to you, Mr. District Attorney, by which you could save money."

District Attorney: "You made it to the court—you wanted this man to plead guilty and get life."

An exception was taken and the court was ·asked to admonish the jury. The district attorney was immediately rebuked by the trial judge and the jury "was instructed to disregard entirely the remarks of the district attorney". Subsequently the jurors were also instructed that statements of counsel were not evidence and were not to be considered by them in their deliberations. The testimony of appellant was such as to remove all questions from the case except the one of whether he should suffer the extreme penalty or that of life imprisonment. In view of this fact and the prompt admonition to the jury to disregard the remark, together with a rebuke to the district attorney for having made it, it is impossible to conclude that the harm, if any in fact was done, was not undone.

Appellant says the district attorney was guilty of misconduct because in his examination of the jurors and in his argument he "repeatedly and constantly reminded the jurors of the fact that they would be violating their oath if they did not render a verdict in this case which would cause the defendant to be hung". Our attention is not directed to any portion of the transcript where we may find an instance of the conduct of which complaint is made. We have, however, read the transcript, including the argument of the district attorney, in full, and find that on no occasion was such claimed misconduct assigned as such, and that at no time was the district attorney or the court given an opportunity to correct the error if any was made or rectify the damage if any was done. Furthermore, we do not believe the district attorney strayed beyond the limits of legitimate argument. The sum and substance of his statements is that he believed the cause was one of cold, premeditated, brutal murder, with robbery as the ultimate object, and the perpetrator thereof deserving of only the extreme pun-

ishment; that he had asked all of them upon their examination if in a proper case they would hesitate to vote such a verdict; that they had answered in the negative, and finally upon the premises of his stated belief that it was a proper case for the death penalty he asked them not to flinch from their responsibility for fear of criticism or from the effects of misapplied sympathy.

Finally, appellant says the court committed error when it refused to instruct the jury as follows: "If you are satisfied that this defendant is guilty of first degree murder and there is a reasonable doubt in your mind as to whether he should suffer a sentence of death or a sentence of life imprisonment, you should resolve that doubt in favor of the defendant, because it is wholly within the discretion of the jury as to which punishment should be meted out or given to the defendant," and in connection with the refusal to so instruct the jury it is claimed that the trial judge misdirected them by giving an instruction in these words:

"If you find from the evidence and beyond a reasonable doubt, that the defendant is guilty of murder of the first degree, and that there are some extenuating circumstances, which entitle him to the punishment of imprisonment in state's prison for life, then the form of your verdict would be", etc. The refusal of the court to give the requested instruction was proper. (*People* v. *Ross*, 134 Cal. 256 [66 Pac. 229].) A comparison of the instruction asked and refused in the cited case with the one here demonstrates that they are in substance the same. It was there held that the court did not err.

With respect to the instructions given, the cases of *People* v. *Rogers*, 163 Cal. 476–483 [126 Pac. 143], and *People* v. *Harris*, 169 Cal. 53–70 [145 Pac. 520], conclude appellant's argument. In those cases the court went further than in the instant case by saying to the jury that if the evidence did not show "some extenuating fact or circumstance, it is the duty of the jury to find a simple verdict of murder in the first degree, and leave with the law the responsibility of affixing the punishment".

Finally, it should be said that the record herein demonstrates beyond any doubt that appellant was guilty of a most cruel, cold-blooded murder. There can be no question in the mind of one who reads it that there are no circumstances

which would have justified the jury in affixing anything less than the extreme penalty of the law.

Judgment and order affirmed.

Shenk, J., Curtis, J., Langdon, J., Preston, J., Waste, C. J., and Seawell, J., concurred.