[Crim. No. 4999. In Bank. Nov. 4, 1949.]

THE PEOPLE, Respondent, v. VICTORIANO CORRALES,
Appellant.

Elvin F. Sheehy, Public Defender, for Appellant.

Fred N. Howser, Attorney General, Doris H. Maier and C. J. Scott, Deputy Attorneys General, John Quincy Brown, District Attorney, and Albert H. Mundt, Chief Deputy District Attorney, for Respondent.

EDMONDS, J.—Victoriano Corrales was convicted by a jury upon two counts of first degree murder and has been sentenced to death. Upon the appeal from the judgment and the order denying a new trial, the only questions presented for decision concern the sufficiency of the evidence to establish the corpus delicti of one crime and to justify the conviction of first degree murder in either of them.

In September, 1948, at Steamboat Slough on the Sacramento River, the torso of a woman was found floating about 5 feet from shore. It was wrapped in two blankets tied with electric cord. Inside the blankets there was a scrap of cloth. The severed members were not recovered, and there was nothing to identify the body.

Six months later, a body was seen floating in the American River. It was found to be "the body of a female and the head had been taken off and both legs." A head and leg, which were later recovered from the river, proved to be those severed from this body. Medical evidence based upon an examination of the severed head indicated that death resulted from blows upon it. Although a bracelet was found on one of the arms, the body was not identified.

For a number of months before the first of these bodies was found, Corrales, an agricultural worker, occupied a cabin on the Anderson farm near Sacramento, about one mile from the American River. During that time, a woman known as his wife lived with him. The woman disappeared. Corrales also left and, after a short absence, he returned to the ranch with another woman. Later this woman also disappeared.

Soon after the discovery of the second body, the Andersons became suspicious and notified the sheriff. Officers arrested Corrales, who, upon being questioned, voluntarily made a detailed confession of the murder of Alberta Gomez and Maria Pulida, which included a statement as to the disposal of each of the bodies. He did not testify during the trial, but the brief presented in support of his appeal from the judgment states the facts in regard to the two homicides as he related them to the officers. These facts may be summarized as follows:

In December, 1946, Corrales went to Mexico for the purpose of visiting his mother. During his visit there, he met Alberta and asked her if she cared to return to the United States ''for the purpose of keeping company with him.'' She agreed to do so and came across the border from Mexico illegally.

Corrales and Alberta lived together as husband and wife on the Anderson farm for about 18 months. One day, when Corrales came home from his work, Alberta was not at home. Subsequently she arrived and when Corrales asked her where she had been, she replied: ''It is not your business.'' Further, she stated: ''You aren't even husband.'' Appellant said he knew that but she would have to tell him what she had been doing. Alberta again said ''not your business'' and in the conversation, according to Corrales, he was told to shut his mouth. Corrales lost his temper, picked up a hammer and struck Alberta twice in the head. She weighed approximately 135 pounds and when Corrales found that he could not lift her, he dismembered the body by removing the head, legs and arms. In two trips to the river he disposed of the remains.

Six months passed and Corrales again went to Mexico, where he met Maria Pulida. She agreed to come to the United States with him and entered this country illegally. When they reached Sacramento, Corrales secured a room in a hotel, registering and paying rent for one week. He immediately set out to find a dwelling for her and rented the same cabin where he and Alberta had lived.

Corrales cleaned the cabin and purchased some new furnishings. When he believed the premises were habitable, he

went to the hotel to get Maria. She was not there and Corrales subsequently found her in a barroom in an intoxicated condition. He called a taxicab and took Maria to the ranch. Before leaving the taxicab, there was an argument between Corrales and Maria. She wanted more liquor; Corrales insisted that she had taken too many drinks and should go into the cabin.

She finally did so but soon afterward told Corrales she did not like the place. Corrales replied that it was all he could find. Then, according to Corrales, Maria said: "I had a chance to get a young man." Her statement enraged Corrales, and with a hammer he struck Maria in the head twice. The blows caused her death. Corrales then removed her head and legs and, as before, by again making two trips, disposed of the torso and dismembered parts in the American River.

Corrales presents two contentions: (1) that as to the murder of Alberta, his confessions and extrajudicial statements were admitted in evidence without establishment of the corpus delicti; and (2) the evidence upon both counts is insufficient to show the deliberation and premeditation required to establish murder of the first degree.

 The rule is well settled that "the corpus delicti must be proved by evidence outside the extrajudicial declarations and statements of the defendant. [Citations.] But it is likewise well settled that to authorize their reception in evidence and consideration by the jury, the prosecution is not required to establish the corpus delicti by proof as clear and convincing as is necessary to establish the fact of guilt; rather slight or prima facie proof is sufficient for such purpose. [Citations.] It may be proved by circumstantial evidence and by inferences reasonably drawn therefrom. [Citations.]" (*People* v. *Mehaffey*, 32 Cal.2d 535, 545 [197 P.2d 12].) Tested by these rules, the evidence of the corpus delicti of the murder of Alberta is clearly sufficient.

 The torso was found wrapped in a blanket containing a piece of cloth identified as similar to the dress worn by Alberta; the blanket was tied with wire of the kind missing from the cabin occupied by her and Corrales, and she was never seen after the date of the alleged murder. This evidence established a prima facie showing of identity of the deceased.

 It is argued, however, that the People failed to prove the fact of Alberta's death by means of the unlawful act of another. Although the existence of a mutilated body does not constitute conclusive evidence of death by means of such an act, it

is sufficient to support an inference to that effect. This fact, taken in connection with testimony that Alberta was seen in good health the day of her disappearance and the sickening similarity between the two bodies taken from the water, one of which was clearly shown to be the result of murder, are factors which strengthen the inference of homicide to a point sufficient to allow the introduction of the confessions or statements of Corrales.

It is next contended that the evidence on both counts does not show the deliberation or premeditation necessary for first degree murder. Evidence tending to prove an identical pattern of conduct in each of the crimes supports the determination of deliberate and premeditated killing. Twice Corrales went to Mexico and there found a mistress. She came to the United States illegally and he lived with her until she tired of him, whereupon he killed her. He then dismembered the body and disposed of it in the river. Within any reasonable definition, such conduct certainly shows deliberation and premeditation. His first plan worked so well that, in the case of Maria, he failed to vary even the most superficial details. He found Maria in the *same* town in Mexico where he had met Alberta and brought both of them across the border at the *same* point. He took each woman to the *same* cabin, and, after a quarrel, hit her on the head with the *same* hammer, and dismembered her body with the *same* implements. The bodies were disposed of by the *same* means and at the *same* place.

The judgment and the order denying a new trial affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.