[Crim. No. 5064. In Bank. May 26, 1950.]

THE PEOPLE, Respondent, v. HERMAN AVERY, Appellant.

Morey S. Levenson and Byron F. Lindsley, under appointment by the Supreme Court, for Appellant.

Fred N. Howser, Attorney General, Walter L. Bowers, Assistant Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

SHENK, J.—This is an appeal from a judgment following the conviction of the defendant of first-degree murder and imposing the death penalty.

Defendant Herman Avery was charged by information with the murder of two persons—his wife, Catherine Neal Avery, and his mother-in-law, Estella Neal. The trial court appointed counsel for him. He pleaded not guilty and was tried before a jury. The jury found him guilty of murder in the first degree on both charges and without the recommendation of a life sentence. No motion for new trial was made. Judgment of death was imposed. This court appointed counsel to represent the defendant for the purposes of the appeal.

The case against Avery consists of circumstantial evidence and his own admissions. The prosecution produced evidence of the following: Avery's wife had separated from him and had started divorce proceedings. Avery was on parole from a former conviction. He had been directed by his parole officer to observe the order of the court in the divorce proceedings not to visit his wife. His wife resided with her mother at an isolated place in the country known as Neal Ranch in Harbinson Canyon, San Diego County. On the morning of April 11, 1949, the women were found dead at Neal Ranch; they had died from shotgun wounds. The women had been last seen alive about 7:45 p. m. the preceding evening. On that evening Avery had procured some 12-gauge shotgun shells and at about 8:20 p. m had gone to the vicinity of Neal Ranch in a taxicab. A shotgun was kept on the ranch. In the early morning of April 11, 1949,—about 12:30 a. m.— Avery visited a woman friend in Los Angeles and told her and her companion that he had killed his wife and his mother-in-law with the shotgun kept on the ranch. He said he had gone to the ranch four days before and had hidden the gun; that he had returned the previous evening, obtained the gun, and shot the women. Later that morning Avery was driving his mother-in-law's automobile—an automobile that was kept on the Neal Ranch. He accidentally ran the car off the road. A California highway patrolman, responding to notice of the accident, found a loaded 12-gauge shotgun in the car and five unused 12-gauge shells. After his arrest Avery voluntarily told a captain in the sheriff's office that he had killed the two women. Three empty 12-gauge shells were found near the bodies. Ballistic tests identified one cartridge as having been fired from the shotgun found in the car. Tests for the other two shells were inconclusive. The shotgun shells

found near the bodies, in the car, and in the shotgun were of the same brands that Avery had procured the night before the women were found dead.

At the trial Avery testified that he had visited his wife on the evening of April 10th because she had requested him to do so; that he found the two bodies when he arrived, and that he fled the scene in his mother-in-law's car rather than report to the police because he had violated his parole in being there and felt he was in a suspicious position. He denied that he had told his friend in Los Angeles, or her companion, or the officer that he had killed the women. He denied obtaining shotgun shells. He testified that he and his wife were on amicable relations; that his wife was divorcing him as part of a prearranged agreement that she could do so if his criminal record became enbarrassing to her; that he was on friendly terms with his mother-in-law; and that he had never had violent arguments with either his wife or mother-in-law. The jury resolved the conflict in the evidence in favor of the prosecution.

On the appeal it is contended that the trial court erred in its ruling that Captain A. B. Mason's testimony was proper rebuttal evidence. Mason testified in rebuttal for the People that Avery had confessed to him in the sheriff's office. It is argued that the prosecution intentionally withheld this testimony from its case in chief in order to produce it on rebuttal and surprise the defendant after he had testified. It is asserted that the law prohibits such tactical maneuvering in a criminal trial.

The practice of allowing the district attorney to withhold a part of his case in chief and to offer it after the defense had closed was properly condemned in *People* v. *Rodriguez,* 58 Cal.App.2d 415 [136 P.2d 626], at page 419. While the order of proof rests in the sound discretion of the trial court (Pen. Code, §§ 1093, subd. 4, 1094), an abuse of that discretion might well result from such practice. However, in this case Avery was permitted to take the stand in answer to the testimony claimed to have been erroneously admitted out of order and the testimony involved matters within his own personal knowledge. Under these circumstances it cannot be said that the ruling put him to such disadvantage as to require a reversal.

It is urged that the testimony of Ray Bolton on behalf of the People was also improper rebuttal evidence. In the

prosecution's case in chief Mr. Sutton testified that he gave Avery some shotgun shells. Avery denied this when he testified on his own behalf. Bolton, called in rebuttal, testified that he heard Avery ask Sutton for the shells. Although his testimony might properly have been part of the prosecution's case in chief, it was allowable as additional evidence upon a point put into dispute by Avery's testimony. (See 6 Wigmore on Evidence, 3d ed., p. 516.)

As a further argument it is contended that Bolton's testimony should have been excluded as being incompetent since he stated that he could not positively identify Avery as the man who asked Sutton for the shells. Bolton testified that he observed the incident about which he testified. His testimony, therefore, was not incompetent under section 1845 of the Code of Civil Procedure. The uncertainty of his recollection or his lack of positiveness about the identity of the persons involved went to the weight and not to the competency of this evidence. (*People* v. *Rolfe*, 61 Cal. 540; *People* v. *Harris*, 87 Cal.App.2d 818, 824 [198 P.2d 60].)

Prejudicial misconduct is charged against the trial court when the judge said (in commenting on the admissibility of Bolton's testimony): "He [Bolton] says he thinks [the person he saw] is the defendant." It is argued that the record does not show that Bolton said he thought Avery was the man. The following transcript of the record sufficiently answers the contention:

"Q. Do you know this gentleman [Avery] standing up? A. No, sir.

Q. Have you ever seen him before? A. I think I have.

Q. And do you remember where and when you saw him? A. I know where. It was on a Sunday afternoon."

Error is assigned on the court's refusal to let Mr. Frye testify as an expert on behalf of the defendant on the question whether the firing-pin marks upon some shotgun shells were similar. The evidence was rejected on the ground that the jurors could make the same visual observation of the marks as could the witness. Frye testified that an expert would require a high-powered magnifying glass to detect differences in the marks and that he himself could not detect differences because he was not an expert. The ruling was correct.

Later, in explaining the ruling on the firing-pin marks, the court said: ". . . it was obvious he [Frye] could not tell without a microscope whether they [the marks] were different or not." The court's remark is assigned as misconduct. The

argument is that the defense was trying to show that there was an obvious visual difference in the marks and that the court improperly expressed an opinion that there were no obvious visual differences. Inasmuch as Frye testified that he could not discern any differences without a microscope, the remark was not improper. Moreover it was not objected to at the trial and may not now be urged as a ground for reversal. (*People* v. *MacDonald,* 167 Cal. 545 [140 P. 256]; *People* v. *Bryant,* 101 Cal.App. 84 [218 P. 404]; see *People* v. *Mendez,* 193 Cal. 39, 48 [223 P. 65].)

 The court's refusal to admit evidence of the use of shotguns in the vicinity of Neal Ranch is assigned as error. This evidence was offered to explain the existence of shotgun shells near the bodies. In view of the slight materiality of such evidence the exclusion does not appear to be erroneous.

 Mr. Anderson testified for the People that he heard Avery admit the crime to Mrs. Fisher, a friend of Avery. There was evidence that the witness Anderson had married Mrs. Fisher between the date of the homicide and the trial and that Mrs. Fisher's divorced husband was one of Avery's best friends. On cross-examination counsel for the defendant asked Anderson about Mrs. Fisher's former husband. One question was: ''How long have you known him?'' An objection to the question was sustained. This ruling is assigned as error on the ground that the inquiry was proper to show possible bias and animosity toward the husband that would be reflected against Avery, the husband's friend. Assuming that the objection should have been overruled, no prejudice is shown. The court allowed the defense to establish that Anderson knew the husband, and other inquiry into the possible bias of Anderson was permitted.

 The prosecuting attorney in his summation commented: ''When I go up to ask Mr. Anderson about a statement [concerning the alleged admission] that he had given prior to the time he had been down here [at the trial], that was vigorously objected to.'' This is assigned as misconduct as tending to indicate what Anderson's testimony would have been and as implying that the defense was seeking to foreclose unfavorable evidence. At the end of the summation, however, the court instructed the jury to disregard the remarks of the prosecuting attorney concerning the defense's objections to evidence. In view of this admonition the conduct complained of cannot be said to have prejudiced the defendant.

(See *People* v. *Ong Git,* 23 Cal.App. 148, 157 [137 P. 283].)

Finally, it is contended that the evidence is insufficient to support a verdict of conviction; and that in any event it is insufficient to support a verdict of first-degree murder. It is also argued that the evidence produced against the defendant was the result of "a scandalously incomplete and inefficient investigation" by the police who failed "to follow down all logical points of investigation" thus denying the accused "due process of law."

The foregoing statement of the facts summarized from the record sufficiently supports the verdict of murder. The fact that the defendant procured the shotgun shells the night before the women were found dead and that he used a shotgun that he had hidden four days earlier is proof of the premeditation required for first-degree murder. The defendant is in no position to complain that the prior investigation conducted by the police was inadequate, since he stands convicted upon evidence produced at the trial. *People* v. *Tuthill,* 31 Cal.2d 92 [187 P.2d 16].

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.