[Crim. No. 5363. In Bank. Dec. 17, 1952.]

THE PEOPLE, Respondent, v. DARIO AMAYA, Appellant.

Ivan C. Sperbeck for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, J. F. Coakley, District Attorney (Alameda), and Francis W. Vukota, Deputy District Attorney, for Respondent.

SPENCE, J.—Appellant Amaya and his codefendant Mason were jointly charged with the crime of murder, to which they both pleaded not guilty. Amaya was also charged with a prior felony conviction, which he admitted. After a joint trial before a jury, verdicts of guilty of murder in the first degree were returned against both defendants, the verdict against Mason bearing the recommendation of life imprisonment but that against Amaya being without recommendation. Amaya made a motion for a new trial, which was denied. Judgment followed, and the death sentence was imposed on Amaya. From such judgment and the order denying his motion for a new trial, Amaya appeals.

As grounds for reversal appellant argues the following points: (1) admission of his confession and extrajudicial statements before establishment of the corpus delicti; (2) exclusion of evidence bearing on his mentality and intelligence; (3) prejudicial misconduct of the court; (4) prejudicial misconduct of prosecuting counsel; (5) insufficiency of the evidence to show an attempted robbery rather than mere preparatory acts; and (6) insufficiency of the evidence to sustain the verdict. An examination of the record compels the conclusion that appellant's arguments are without merit.

On February 29, 1952, shortly after 2 p.m., Steven Apostolos was found by the police lying on the floor behind the meat counter of his grocery store in Oakland, with a bullet wound near the eye. When the body was removed, a gun fully loaded was discovered underneath the right knee; it obviously had not been fired. The autopsy performed the next day disclosed that the cause of death was subarachnoid hemorrhage due to gunshot wound with skull fracture. An examination of the interior of the premises and the canned goods on the shelves revealed that there was fired only one shot, which lodged in the decedent's head. A ballistics expert testified that the bullet appeared to have been fired from a fairly large pistol, in the neighborhood of a .41 caliber.

According to witnesses in the vicinity, sometime between 1:30 and 1:45 p.m. that day a man was seen standing in front of the decedent's grocery store. He was described as wearing a gray hat, a beige-colored overcoat and glasses. After a few minutes' wait for the last customer to leave the store, he was seen to raise a handkerchief, which was tied around his neck, so that it would cover the lower part of his face, and to enter the store. Then within a short time following the sound of one shot coming from within the store, he was seen to run out the door, down the street, turn the corner, jump into a parked automobile wherein his confederate was waiting, and together they made their escape. The automobile was described as a chartreuse Ford open-top convertible. The deceased's wife, who was sitting on the stairs of their home which adjoined the store, heard the shot and as the assailant sped down the street, she ran into the store, where she found the victim lying on the floor as above described. A neighbor summoned the police. None of the witnesses was able to identify appellant as the assailant.

About 7:30 that evening the police arrived at appellant's apartment. In their search of the premises they found a gray felt hat and two revolvers, one being a Colt .41 with one live cartridge in it. Two of the officers remained at the apartment in wait for appellant. In about an hour appellant returned. As he started to enter his unlighted apartment, the officers identified themselves and told him to raise his hands. Appellant immediately "jerked back" and at the same time turned, at which instant one of the officers fired one shot, hitting appellant on the outside of his right arm. Appellant was then placed under arrest and taken to the hospital.

Appellant gave two statements at the hospital. The first, taken about 11 that night, was in the form of an oral discourse with a police officer, who immediately thereafter wrote down the substance of appellant's remarks but did not ask him to sign or verify the writing because appellant was "unable to." The second, taken the next day, was a stenographic report of the questioning of appellant by the assistant district attorney. In both statements appellant gave substantially the same story: his planning of the robbery with Mason on the morning of February 29 and their driving around Oakland "looking for a place to take"; their selection of the grocery store because no one seemed to be in there; appellant's entry into the store, with pistol in hand and the lower part of his face covered with a handkerchief; his firing of one shot at the proprietor but only after the latter had first fired; his wearing of two pairs of pants so he could change easily and avoid recognition; and finally, his disposal of the empty cartridge somewhere along the road as he and Mason were making their escape so "there wouldn't be any evidence." At the trial defendant verified the truth of these statements, and added these further details: that with Mason he went about 1 p.m. to his apartment to get certain clothing for use in carrying out the proposed robbery—including the aforementioned hat, overcoat and handkerchief; that after he and Mason had cruised around town for about half an hour, Mason parked the chartreuse Ford convertible around the corner from the grocery store and waited while appellant, about 1:45 p.m., entered the store intent on committing the planned robbery; and that the gun he carried as he entered the store had only two shells in it. The evidence does not show that any money or other property was taken from the store or the person of the deceased in the course of the homicide.

Taking up appellant's points in their order of presentation, the first is his contention that the corpus delicti was not proved before his confession and extrajudicial statements were admitted. ▮ In a murder charge the corpus delicti consists of two elements: the death of the alleged victim and the existence of some criminal agency as the cause, either or both of which may be proved circumstantially or inferentially. (*People* v. *Cullen*, 37 Cal.2d 614, 624 [234 P.2d 1], and cases there cited.) ▮ However, the corpus delicti must be proved by evidence independent of the extrajudicial declarations and statements of the defendant (*People* v. *Mehaffey,*

32 Cal.2d 535, 544 [197 P.2d 12]; *People* v. *Corrales,* 34 Cal.2d 426, 429 [210 P.2d 843]) so that he may be protected against the possibility of fabricated testimony which might wrongfully establish the crime and the perpetrator (*People* v. *Cullen, supra,* 37 Cal.2d 614, 625; *People* v. *Stoddard,* 85 Cal.App.2d 130, 134 [192 P.2d 472]). ■ But as prerequisite to the reception of such statements in evidence, the corpus delicti need not be established by proof as clear and convincing as is necessary to establish the fact of guilt; rather it is sufficient that only a prima facie showing be made that the alleged victim met death by a criminal agency. (*People* v. *Mehaffey, supra,* 32 Cal.2d 535, 545; *People* v. *Corrales, supra,* 34 Cal. 2d 426, 429.) ■ Nor is it necessary at this point to connect the defendant with the perpetration of the crime. (*People* v. *Cullen, supra,* 37 Cal.2d 614, 624.) Tested by these rules, the sufficiency of the preliminary proof of the corpus delicti is not open to dispute.

. ■ On the day in question the body of Steven Apostolos was found shortly after 2 p.m. in his grocery store, showing death from a gunshot wound. His gun was lying underneath his body but it had not been fired, and so the wound was not self-inflicted. About half an hour earlier a man was described as waiting near the premises and, after a few minutes, entering the store, meanwhile adjusting a handkerchief so that it would cover the lower part of his face; a single shot was heard; the same man was then seen to run out the door and down the street, turn the corner and jump into a parked automobile, which thereupon sped down the road. This evidence, showing the death and a criminal agency as the cause, was introduced prior to the admission of appellant's confession and extrajudicial statements. Accordingly, the most exacting requirements of the law as to the essential preliminary proof of the corpus delicti were satisfied, and without reference to the rule that the order of proof is deemed discretionary with the trial court. (*People* v. *Mehaffey, supra,* 32 Cal.2d 535, 547-548; *People* v. *Cullen, supra,* 37 Cal.2d 614, 625.)

■ Nor is admission of the statements open to objection by reason of the surrounding circumstances. The fact that they were made while appellant was in custody and to a police or prosecuting officer does not affect their voluntary character. (*People* v. *Gonzales,* 24 Cal.2d 870, 875 [151 P.2d 251]; *People* v. *Mehaffey, supra,* 32 Cal.2d 535, 548.) The police officer who took the first statement testified that it

was freely and voluntarily given by appellant, made without any previous inducement or by reason of any intimidation or threat; and the second statement taken by the assistant district attorney was admitted without objection as to its voluntary nature, and was practically the same in substance. Any evidence tending to show that appellant may have been in pain when he gave the statements at the hospital did not affect their admissibility but only the jury's consideration of the weight and effect to be given them. (*People* v. *Miller,* 135 Cal. 69, 71-72 [67 P. 12]; *People* v. *Lehew,* 209 Cal. 336, 342 [287 P. 337]; *People* v. *Egan,* 133 Cal.App. 152, 158 [23 P.2d 1042].) His possible pain at the time was in nowise shown to reflect on his competency. Accordingly, the jury was instructed that it was for them to determine ultimately the credibility and voluntary nature of the statements.

Nor is there merit to appellant's second argument that the trial court circumscribed evidence of his mental condition. The only testimony offered on this point was that of appellant's mother. She testified fully on the subject of appellant's background and mentality, and the record does not show that either she or appellant's counsel had any further evidence to introduce in that connection.

Appellant directs his third argument to alleged prejudicial misconduct of the court. Two points are here raised and both appear of trifling importance. The first concerns the condition of the record in that four guns had been introduced in evidence, two of them having been found in the grocery store: one under the victim's body as above stated and the other wrapped in a cloth in a drawer of the cash register. The deceased's wife, in the course of cross-examination by counsel for appellant's codefendant, was describing the appearance of the latter gun on the only occasion when she had previously seen it. Counsel asked her if she recalled when the deceased showed her ''this particular gun.'' At this juncture, the court interposed the remark: ''That is the *viciousness* of the question. You don't say where she was shown it. 'This,' counsel?'' The court then added: ''It is very misleading.'' Thereupon counsel proceeded to frame his question more exactly by reference to the gun according to exhibit number and the witness concluded her testimony on the point. It is manifest that the word ''viciousness'' was used by the court in an explanatory sense, having reference to a purported ambiguity in the wording and

its possible misleading effect. In the course of direct examination, the witness had directed her remarks to two guns in evidence, a circumstance which apparently provoked the court's alleged objectionable remark upon her cross-examination so as to avoid any confusion in the identity of the guns. In this sense, the court's remark would be no more objectionable than a comment that a question by examining counsel is not intelligible (*People* v. *Becker*, 94 Cal.App.2d 434, 445 [210 P.2d 871]). Moreover, appellant appears to have attached no importance to the court's remarks at the time, for he made no objection to their tenor at the trial. (*People* v. *Avery*, 35 Cal.2d 487, 493 [218 P.2d 527] ; *People* v. *Becker*, *supra*, 94 Cal.App.2d 434, 445; *People* v. *Kobey*, 105 Cal. App.2d 548, 560 [234 P.2d 251].)

The second objection to the court's behavior relates to a comment made during the course of the deputy district attorney's cross-examination of appellant with reference to his association with Mason, his codefendant, on the day in question. Counsel for Mason objected to such questioning as "not proper cross-examination" and the court stated that it would "reserve a ruling" but would rule against counsel if pressed. Appellant argues that his codefendant's counsel was thus precluded from making a further objection because of the threat of an adverse ruling. Regardless of the fact that the disputed propriety of the court's comment concerned a matter between the court and counsel for appellant's codefendant, in any event it has no significance in the record, for upon the deputy district attorney's continuance with the same line of questioning of appellant, the court promptly sustained the objection of counsel for appellant's codefendant. As relating to questions directed to establishing Mason's admitted connection with appellant in the commission of the crime, manifestly the matter had no prejudicial effect on appellant's rights. Again appellant made no objection to the court's remarks at the trial and he may not now urge the point on appeal. (*People* v. *Avery*, *supra*, 35 Cal.2d 487, 493.)

Likewise there is no force to appellant's fourth argument concerning alleged prejudicial misconduct by prosecuting counsel. Three matters are raised. The first relates to the circumstances of the police officers' having found two guns in appellant's apartment. In discussing the admissibility of one of the guns in evidence, the assistant district attorney stated that it was found at the same time that the

"other gun used in the robbery was found." Apparently appellant would prefer that the assistant district attorney had said "allegedly used." But that, of course, is what was meant and the statement only amounted to a reasonably quick attempt to identify the circumstances of the gun's discovery. (*Cf. People* v. *Lew Fat,* 189 Cal. 242, 246 [207 P. 881] ; *People* v. *Frank,* 132 Cal.App. 360, 368 [22 P.2d 792].) Moreover, appellant admitted at the trial that the "other gun" was used in the homicide. If appellant deemed that any harmful effect might attach to the statement in question, he should have made timely objection at the trial so that any misunderstanding could have been clarified by a proper instruction to the jury. (*People* v. *Codina,* 30 Cal. 2d 356, 362 [181 P.2d 881] ; *People* v. *Cook,* 39 Cal.2d 496, 500 [247 P.2d 567].)

The second and third matters concern remarks made by prosecuting counsel in their arguments to the jury. In his opening argument, the deputy district attorney referred to defendant as having committed a "cold-blooded murder." Such remark appears no more than a characterization of the evidence sustaining the prosecution's charge of first degree murder (*People* v. *Rossi,* 37 Cal.App. 778, 782 [174 P. 916]) and does not transcend the bounds of legitimate comment (*People* v. *Harris,* 219 Cal. 727, 732 [28 P.2d 906]). In his closing argument, the assistant district attorney alluded to the plea of appellant's counsel that the extreme penalty should not be exacted in this case and the latter's reference to the "enlightened action of some eight states in repealing the death penalty." The assistant district attorney then added that "most, if not all those states provide that life imprisonment is life imprisonment, and that there is no parole if the death penalty is not imposed." Such last statement may properly be regarded as fair comment to correct a false impression created by the remark of appellant's counsel as to the practice in *other* states. (*Cf. People* v. *Gomez,* 209 Cal. 296, 300 [286 P. 998].) It notably did not include any comment on the parole system in California (*cf. People* v. *Ramirez,* 1 Cal.2d 559, 564-565 [36 P.2d 628] ; *People* v. *Rogan,* 1 Cal.2d 615, 621-622 [36 P.2d 631]) and so would be less likely to have a harmful effect. Moreover, the court admonished the jury that the statements and arguments of counsel were not evidence in the case, and where they were not supported by

the evidence or were inconsistent with the instructions as to the law, they should be disregarded. Under the circumstances and in view of the record showing that the case is not "closely balanced," the assailed remarks cannot be held prejudicial. (*People* v. *Sampsell,* 34 Cal.2d 757, 764 [214 P.2d 813].)

Appellant's fifth argument rests on the claim that the evidence did not show an attempted robbery but only acts which did not go beyond the preparatory stage. There is no merit to his position. The evidence showed both appellant's intent to commit a robbery and his ineffectual acts done in attempting its commission. (7 Cal.Jur. 877, § 32; *People* v. *Moran,* 18 Cal.App. 209, 210-211 [122 P. 969]; see *People* v. *Parrish,* 87 Cal.App.2d 853, 856 [197 P.2d 804].) In both his extrajudicial statements as well as in his testimony at the trial, appellant admitted that he was looking that day for a place to rob and that he entered the deceased's store for that purpose. In line with that intent, he further stated that he dressed so as to avoid recognition, wearing an extra pair of pants so he could make "a quick change," and as he opened the door into the store, pulling a handkerchief over the lower portion of his face and his gun out of his pocket. Witnesses in the vicinity unanimously agreed in their testimony as to the timely sequence of the assailant's acts: his entry into the store, after first waiting outside a few minutes for the last customer to leave; his adjusting of a handkerchief over his face as he entered; his running from the premises and jumping into a waiting car, which was parked around the corner and used to make his escape. Such condition of the record readily supports the conclusion that an attempt to commit a robbery was here undertaken. (See *People* v. *Moran, supra,* 18 Cal.App. 209, 210-211; *People* v. *Raucho,* 8 Cal.App.2d 655, 663 [47 P.2d 1108].)

Appellant's final and sixth argument is his unavailing challenge of the sufficiency of the evidence to sustain the verdict. The attempted robbery was relevant to establishing the degree of the murder (Pen. Code, § 189) and appellant's extrajudicial statements were pertinent to its proof. (*People* v. *Miller,* 37 Cal.2d 801, 806 [236 P.2d 137]; see, also, *People* v. *Lytton,* 257 N.Y. 310 [178 N.E. 290, 292, 79 A.L.R. 503].) Appellant's testimony confirmed the robbery motive and accompanying acts in furtherance of its commission prior to the homicide charged. His only point

of disagreement with the unanimous account of all other witnesses in the vicinity who testified was his claim that the deceased fired first. Of course, it was for the jury to determine his credibility as against that of said witnesses who agreed that only one shot was fired. (*People* v. *Smith,* 15 Cal.2d 640, 648 [104 P.2d 510].) There was substantial evidence in support of the jury's determination and its finding will not be disturbed. (*People* v. *Smith, supra,* p. 648; *People* v. *Eggers,* 30 Cal.2d 676, 685 [185 P.2d 1].)

The judgment and the order denying a new trial are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied January 15, 1953.