[Crim. No. 3333. Third Dist. Oct. 9, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. BEATRICE VILLALOBOS, Defendant and Appellant.

Edward J. Allen, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

SCHOTTKY, J.—Beatrice Villalobos was accused by indictment with the crime of involuntary manslaughter, it being alleged that "she did unlawfully kill, without malice, one CHARLOTTE RAMERIZ in the commission of an unlawful act, not amounting to felony, and in the commission of a lawful act which might produce death in an unlawful manner and without due caution and circumspection." The jury found her guilty as charged, her motion for a new trial was denied, and she has appealed from the judgment entered on such verdict and from the order denying her motion for a new trial.

In arguing for a reversal of the judgment, appellant makes two major contentions. (1) That the evidence was insufficient to justify the verdict; and (2) that the court erred in allowing the introduction of appellant's statements because of the failure to establish the corpus delicti of the crime. Before discussing these contentions, we shall give a brief summary of the evidence as shown by the record.

Beatrice Villalobos, referred to hereafter as the appellant, was residing in a small five-room cottage with her paramour, Octavio Gomez, her six children, her sister, Irene Fuentes, and

her sister's two children. About 4:30 p. m. on November 5, 1961, Irene and Octavio left the house to gather firewood. Appellant remained in the house, as did her daughter Charlotte, a 3-year-old child who was usually kept in a small open recess in a bedroom. Appellant discovered that the child had soiled herself. She took the child into the bathroom where she removed the child's diaper and partially cleaned her. She then placed the child in the washbasin and went into the kitchen to get a pan of cold water. The washbasin had only a single spigot which discharged hot water. Appellant poured the cold water into the washbasin and opened the tap a bit and returned to the kitchen. When she came back she removed the child from the washbasin and put her in the shower. She noticed that the child's skin seemed wrinkled and pinkish but she did not think anything of it. After she had bathed the child, she saw that the child's feet, ankles, thighs, buttocks and genitals were scorched by hot water. She then put the child in bed. Appellant admitted the skin was sloughing from the burns the child received. After Octavio and Irene returned, appellant, who was pregnant, was taken to the hospital by Octavio. Irene remained in the house. About 10 p. m. she heard Charlotte crying and after investigating discovered that the child's legs were red and the skin was peeling. The child was taken to the hospital. Upon her arrival, it was ascertained that the child had first and second degree burns. The feet and ankles were quite red, the skin had sloughed off, and the burns were dry. The burns around the buttocks and the left thigh had blisters on them. Charlotte died. The autopsy report stated the child had severe second or third degree burns involving the lower legs, the back of the thighs, the region around the perineum and high up on the buttocks. The area of the burns covered 20 to 25 per cent of the body. The cause of death was severe swelling of the brain. The pathologist testified that the burns set off the chain of events which caused death. He also testified that it would be very difficult to see how burns of the particular distribution could have been self-inflicted.

In addition to the above, there was evidence that appellant disliked Charlotte and had treated her cruelly.

We shall first discuss appellant's contention that the corpus delicti of the crime was not established before appellant's admissions were introduced in evidence.

"In a murder charge the corpus delicti consists of two elements; the death of the alleged victim and the existence

of some criminal agency as the cause. (*People* v. *Cullen,* 37 Cal.2d 614, 624 [234 P.2d 1], and cases cited.) ▆ The corpus delicti must be proved by evidence independent of the extrajudicial statements of the accused. ▆ But, as a prerequisite to the reception of a defendant's extrajudicial statements in evidence, the corpus delicti need not be established by proof as clear and convincing as is necessary to establish guilt. (25 Cal.Jur.2d 510-513, and cases cited.) ▆ The corpus delicti need only be shown by some evidence, and a prima facie showing that the alleged victim met death by a criminal agency will suffice. (*People* v. *Corrales,* 34 Cal.2d 426, 429 [210 P.2d 843]; *People* v. *Mehaffey,* 32 Cal.2d 535, 545 [197 P.2d 12], and cases cited.) ▆ Furthermore, the corpus delicti may be established wholly by circumstantial evidence and by inferences reasonably derived therefrom. (*People* v. *Corrales, supra,* 34 Cal.2d 426, 429; *People* v. *Mehaffey, supra,* 32 Cal.2d 535, 545.) ▆ And such evidence need not connect defendant with the commission of the crime. (*People* v. *Amaya,* 40 Cal.2d 70, 76 [251 P.2d 324].)'' (*People* v. *Misquez,* 152 Cal.App.2d 471, 477 [313 P.2d 206]; see also *People* v. *Ogg,* 159 Cal.App.2d 38 [323 P.2d 117].)

▆ The evidence discloses that Charlotte died as the result of burns which covered 20 to 25 per cent of her body. The autopsy surgeon testified that it was unlikely the burns could have been self-inflicted. There was evidence that the burns were incurred some five or six hours prior to the time the child was received at the hospital. There was also evidence that the child was kept in a recess in a room away from the kitchen or the bathroom. Appellant and the child were in the home. We believe that a prima facie case was established that the burns were inflicted on the child other than by accident. There was no fire and the burns were not self-inflicted.

A more difficult question is whether the evidence supports the judgment.

Manslaughter is the unlawful killing of a human being. It is of three kinds: ''2. Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; . . .'' (Pen. Code, § 192.)

Section 20 of the Penal Code requires that ''In every crime

or public offense there must exist a union, or joint operation of act and intent, or criminal negligence.''

Section 26 of the Penal Code provides in part that a person is incapable of committing a crime if the act charged was done through misfortune or by accident, when it appears that there was no evil design, intention or culpable negligence.

Even if a person commits an unlawful act not amounting to a felony, there must be a showing that the unlawful act was committed with criminal intent or criminal negligence in order for the person to be guilty of the crime of involuntary manslaughter. (*People* v. *Stuart*, 47 Cal.2d 167, 173 [302 P.2d 5, 55 A.L.R.2d 705].) ''To be an unlawful act within the meaning of section 192 . . ., the act in question must be dangerous to human life or safety and meet the conditions of section 20.'' (*People* v. *Stuart, supra*, p. 173.)

The unlawful act relied on by respondent is found in section 273a of the Penal Code, which reads: ''Any person who willfully causes or permits any child to suffer, or who inflicts thereon unjustifiable physical pain or mental suffering, and whoever, having the care or custody of any child, causes or permits the life or limb of such child to be endangered, or the health of such child to be injured, and any person who willfully causes or permits such child to be placed in such situation that its life or limb may be endangered, or its health likely to be injured, is guilty of a misdemeanor.''

The evidence was sufficient for the jury to determine that defendant committed an act which endangered the life or limb of the child by placing her in the washbasin and turning on the hot water spigot. The jury could find from the evidence that defendant violated section 273a of the Penal Code.

But in addition to evidence of the violation of the statute, we must find evidence of criminal intent or criminal negligence. As stated in *People* v. *Penny*, 44 Cal.2d 861 [285 P.2d 926], at page 879: ''The statute (Pen. Code, § 192, subd. 2) provides (in part) that in order to convict a person of involuntary manslaughter, there shall be an unlawful killing of a human being in the commission of a lawful act which might produce death without due caution and circumspection. The words lack of 'due caution and circumspection' have been heretofore held to be the equivalent of 'criminal negligence' (Pen. Code, § 20). The general rule is set forth in 26 American Jurisprudence, Homicide, section 210, page 299, as fol-

lows: 'The authorities are agreed, in the absence of statutory regulations denouncing certain acts as criminal, that in order to impose criminal liability for a homicide caused by negligence, there must be a higher degree of negligence than is required to establish negligent default on a mere civil issue. The negligence must be aggravated, culpable, gross, or reckless, that is, the conduct of the accused must be such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances as to be incompatible with a proper regard for human life, or, in other words, a disregard of human life or an indifference to consequences.' The article continues thus: 'Aside from the facts that a more culpable degree of negligence is required in order to establish a criminal homicide than is required in a civil action for damages and that contributory negligence is not a defense, criminal responsibility for a negligent homicide is ordinarily to be determined pursuant to the general principles of negligence, the fundamental of which is knowledge, actual or imputed, that the act of the slayer tended to endanger life. The facts must be such that the fatal consequence of the negligent act could reasonably have been foreseen. It must appear that the death was not the result of misadventure, but the natural and probable result of a reckless or culpably negligent act.' ''

As stated in *People* v. *Rodriquez*, 186 Cal.App.2d 433, 440 [8 Cal.Rptr. 863] : ''It is generally held that an act is criminally negligent when a man of ordinary prudence would foresee that the act would cause a high degree of risk of death or great bodily harm. The risk of death or great bodily harm must be great. (See cases collected 161 A.L.R. 10.) Whether the conduct of defendant was wanton or reckless so as to warrant conviction of manslaughter must be determined from the conduct itself and not from the resultant harm. (*Commonwealth* v. *Bouvier*, 316 Mass. 489 [55 N.E.2d 913].) Criminal liability cannot be predicated on every careless act merely because its carelessness results in injury to another. (*People* v. *Sikes*, 328 Ill. 64 [159 N.E. 293, 297].) The act must be one which has knowable and apparent potentialities for resulting in death. Mere inattention or mistake in judgment resulting even in death of another is not criminal unless the quality of the act makes it so. The fundamental requirement fixing criminal responsibility is knowledge, actual or imputed, that the act of the

accused tended to endanger life. (*State* v. *Studebaker*, 334 Mo. 471 [66 S.W.2d 877, 881].)''

 Applying the rationale of the foregoing authorities to the facts of the instant case, we are convinced that the jury was justified in concluding that the facts in this case clearly establish that the act of the appellant, even if we accept her version of what occurred, was a lawful act performed in a criminally negligent manner, for that evidence shows that she placed the victim, a 3-year-old child, in a washbasin and turned on a hot water tap which she knew would send scalding water into the washbasin; and after doing this, she left the child in the washbasin, knowing full well that the child was incapable of protecting herself from the obvious harm which would follow.

 The failure to use due care in the treatment of another where a duty to furnish such care exists is sufficient to constitute that form of manslaughter which results from an act of omission. (*People* v. *Chavez*, 77 Cal.App.2d 621, 628 [176 P.2d 92]; *People* v. *Montecino*, 66 Cal.App.2d 85, 100 [152 P.2d 5].)

The burns inflicted upon the victim would have resulted in blistering within minutes after they were inflicted and would have caused the skin to slough off. The appellant herself admitted that before putting the child to bed she had become aware of the horrible burns which had been inflicted. As the mother of the victim and the only adult then present she had the duty to see that some action was taken to protect that child's life.

We are convinced that the question of whether or not appellant was guilty of acting without due caution and circumspection was a question for the jury to determine, as was also the question of whether the actions and conduct of appellant amounted to criminal negligence. The jury was fully and correctly instructed as to the law applicable to the offense with which appellant was charged, and the trial court, apparently with some reluctance, denied her motion for a new trial. As an appellate tribunal, we would not be justified in holding that the evidence does not support the judgment because we cannot say that the verdict of the jury is without substantial support in the record. Under such circumstances, finding no error in the record, it is our duty to affirm the judgment and order.

The judgment and order are affirmed.

Peek, P. J., and Pierce, J., concurred.