[No. C054891. Third Dist. Oct. 24, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
LLOYD HENRY MURRAY, Defendant and Appellant.

## COUNSEL

Patricia L. Watkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Peter W. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HULL, J.**—Defendant Lloyd Henry Murray was convicted by a jury of involuntary manslaughter (Pen. Code § 192, subd. (b); unspecified section references that follow are to the Penal Code), aggravated assault (§ 245, subd. (a)(1)), and dissuading a witness (§ 136.1, subd. (b)(3)). The jury also found defendant caused great bodily injury in connection with the aggravated assault (§ 12022.7, subd. (b)), and the trial court found defendant served a prior prison term (§ 667.5, subd. (b)). Defendant was sentenced to an aggregate, unstayed term of 12 years in state prison.

Defendant appeals, contending his conviction for aggravated assault must be reversed because (1) under the circumstances of this case, aggravated assault is a lesser included offense of involuntary manslaughter; and (2) he could not be prosecuted for aggravated assault when the more specific offense of involuntary manslaughter applies. We affirm the judgment.

### FACTS AND PROCEEDINGS

On the evening of December 2, 2005, defendant was involved in a fight in the parking lot of a Holiday Inn. Travis Williams, a security officer at the

hotel, went outside to break up the fight and defendant punched him in the face, causing Williams to fall over, strike his head on the pavement, and fracture his skull. Brian Dorsey, another security officer, grabbed defendant from behind, forced him to the ground, and held him there in a choke hold. As defendant went to the ground, he kicked Williams in the head. Defendant continued to struggle to free himself from Dorsey until police arrived, calling Dorsey a "fucking nigger" and saying that Dorsey was messing with a "big bad Norteno." Williams lapsed into a coma as a result of the skull fracture sustained in the fall to the pavement and later died.

Defendant claimed to have been too drunk to remember the events of that evening. At trial, defense counsel argued alternatively that defendant did not punch Williams, but, if he did, it was in self-defense. The jury was not persuaded by either argument and convicted defendant as indicated above.

Defendant was sentenced on the aggravated assault charge to the upper term of four years, plus five years for the great bodily injury enhancement and one year for the prior prison term. On the dissuading a witness charge, defendant was sentenced to a full consecutive middle term of two years pursuant to section 1170.15. On the manslaughter charge, he received the upper term of four years, but that term was stayed pursuant to section 654.

DISCUSSION

I

*Lesser Included Offense*

Defendant contends he was improperly convicted of both aggravated assault and involuntary manslaughter, because the former is a lesser included offense of the latter whenever an assault results in the death of the victim. We disagree.

██ "In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged." ' " (*People v. Reed* (2006) 38 Cal.4th 1224, 1226 [45 Cal.Rptr.3d 353, 137 P.3d 184].) "A judicially created exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.' [Citation.] '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' " (*Id.* at p. 1227.)

The courts have applied two tests in determining whether one offense is necessarily included within another: the elements test and the accusatory pleading test. "Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former." (*People v. Reed, supra*, 38 Cal.4th at pp. 1227–1228.) However, when determining if a defendant may be convicted of multiple offenses, only the elements test applies. (*Id.* at p. 1229.)

■ An assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) An assault is aggravated when committed with a deadly weapon or "by any means of force likely to produce great bodily injury." (§ 245, subd. (a)(1).)

"Assault requires the willful commission of an act that by its nature will probably and directly result in injury to another (i.e., a battery), and with knowledge of the facts sufficient to establish that the act by its nature will probably and directly result in such injury." (*People v. Miceli* (2002) 104 Cal.App.4th 256, 269 [127 Cal.Rptr.2d 888].) However, the act need not be the last act immediately antecedent to battery. The present ability element of assault "is satisfied when 'a defendant has attained the means and location to strike immediately.' " (*People v. Chance* (2008) 44 Cal.4th 1164, 1168 [81 Cal.Rptr.3d 723].) This may be satisfied even where there are several steps to be taken before completion of the battery or where, unknown to the offender, circumstances exist that make completion of the battery impossible. (*Id.* at p. 1172.) Thus, in *People v. Ranson* (1974) 40 Cal.App.3d 317 [114 Cal.Rptr. 874], the defendant was properly convicted of assault where he aimed a rifle at a police car, even though there was no round in the chamber because a cartridge had jammed in the magazine, thereby requiring the defendant to clear the magazine jam and chamber a round before being able to complete a battery. In *Chance*, the high court determined there had been an assault where the defendant was being chased by a police officer, hid behind a trailer, and aimed a gun at a location where he expected the officer to appear. However, unknown to the defendant, the officer took evasive action and approached the trailer from the opposite side, thereby coming up behind the defendant and forcing him to drop his weapon before he had an opportunity to aim it at the officer. (*Chance*, at pp. 1168–1169.)

Assault is a general intent crime; it is not necessary that the perpetrator intended to injure the victim. (*People v. Williams* (2001) 26 Cal.4th 779, 788 [111 Cal.Rptr.2d 114, 29 P.3d 197].) It is also not necessary that the perpetrator be subjectively aware of the risk that an injury might occur. (*Id.* at p. 790.)

■ "Manslaughter is the unlawful killing of a human being without malice." (§ 192.) Involuntary manslaughter is manslaughter during "the commission of an unlawful act, not amounting to a felony," or during "the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (§ 192, subd. (b).) "The offense of involuntary manslaughter requires proof that a human being was killed and that the killing was unlawful. [Citation.] A killing is 'unlawful' if it occurs (1) during the commission of a misdemeanor inherently dangerous to human life, or (2) in the commission of an act ordinarily lawful but which involves a high risk of death or bodily harm, and which is done 'without due caution or circumspection.' " (*Sea Horse Ranch, Inc. v. Superior Court* (1994) 24 Cal.App.4th 446, 454 [30 Cal.Rptr.2d 681].)

■ It is readily clear the statutory elements of involuntary manslaughter do not necessarily include all of the statutory elements of aggravated assault. Aggravated assault requires an act that by its nature will directly and probably result in the application of force to a person. Involuntary manslaughter requires either an unlawful act or "the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (§ 192, subd. (b).) It is not necessary for manslaughter that the act be such as would directly and probably result in the application of force to the victim. Aggravated assault also requires knowledge of "facts that would lead a reasonable person to realize that a *battery* would directly, naturally and *probably* result from his conduct." (*People v. Williams, supra*, 26 Cal.4th at p. 788, italics added.) Involuntary manslaughter may be based on the commission of a lawful act that *might* produce *death*. (See *Orlina v. Superior Court* (1999) 73 Cal.App.4th 258, 261 [86 Cal.Rptr.2d 384].)

Defendant argues: "Logic dictates that a homicide cannot occur without the use of force likely to cause great bodily injury or use of a deadly weapon." However, the issue here is not whether an aggravated assault is likely to occur when an involuntary manslaughter is committed but whether the statutory elements of involuntary manslaughter *necessarily* include all of the statutory elements of aggravated assault. Because involuntary manslaughter can occur in the commission of a lawful act without due caution and circumspection, which act need not be such as would probably and directly result in a battery, aggravated assault is not a necessarily included offense of involuntary manslaughter.

## II

### Specific Versus General Offenses

Defendant contends his conviction for aggravated assault, with an enhancement for causing great bodily injury, must be reversed, because the crime of

involuntary manslaughter is a special offense that preempts the more general offense of aggravated assault whenever the assault results in the victim's death. We conclude neither offense is more specific than the other and, consequently, the prosecution had discretion to prosecute for either or both offenses.

■ "The preemption doctrine provides that a prosecution under a general criminal statute with a greater punishment is prohibited if the Legislature enacted a specific statute covering the same conduct and intended that the specific statute would apply exclusively to the charged conduct." (*People v. Jones* (2003) 108 Cal.App.4th 455, 463 [133 Cal.Rptr.2d 358].) "The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent. The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply. Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and 'requires us to give effect to the special provision alone in the face of the dual applicability of the general provision . . . and the special provision. . . .' " (*People v. Jenkins* (1980) 28 Cal.3d 494, 505–506 [170 Cal.Rptr. 1, 620 P.2d 587], fn. omitted.) Without this rule, there would be no practical reason for the specific offense to exist, as a violation of the specific statute would commonly be charged under the general statute providing for greater punishment.

On count one, defendant was convicted of involuntary manslaughter under section 192, subdivision (b), which, as described above, proscribes the killing of a human being "in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." In her argument to the jury, the prosecutor explained count one is based on defendant punching the victim in the face.

On count two, defendant was convicted of aggravated assault by means of force likely to produce great bodily injury, as proscribed by section 245, subdivision (a)(1). The jury also found true an allegation of great bodily injury under section 12022.7, subdivision (b), which states: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony which causes the victim to become comatose due to brain injury or to suffer paralysis of a permanent nature, shall be punished by an additional and consecutive term of imprisonment in the state prison for five years." The prosecutor argued the aggravated assault conviction is based on defendant punching the victim in the face, jumping on top of him, and kicking him in the head. A unanimity poll taken at the time the verdict was read showed the jury convicted defendant of

aggravated assault based on both the punch in the face and the kick in the head. However, in her argument to the jury, the prosecutor based the great bodily injury allegation solely on defendant punching the victim in the face which, according to the evidence, caused the victim to lapse into a coma and eventually die. Therefore, both the involuntary manslaughter conviction and the aggravated assault conviction coupled with the great bodily injury enhancement are based on the punch in the face.

The rule prohibiting prosecution under a general statute when a special statute applies "is not one of constitutional or statutory mandate, but serves as an aid to judicial interpretation when two statutes conflict." (*People v. Walker* (2002) 29 Cal.4th 577, 586 [128 Cal.Rptr.2d 75, 59 P.3d 150].) Thus, the question in the present matter is whether the Legislature intended that section 192 preempt section 245 whenever an assault by means of force likely to produce great bodily injury results in the death of the victim.

■ "To determine the applicability of [the preemption] doctrine in a particular case, the courts have developed two alternative tests. Under these tests, a prosecution under the general statute is prohibited if: (1) 'each element of the general statute corresponds to an element on the face of the [specific] statute'; or (2) 'it appears from the statutory context that a violation of the [specific] statute will necessarily or commonly result in a violation of the general statute.' " (*People v. Jones, supra,* 108 Cal.App.4th at p. 463; see also *People v. Coronado* (1995) 12 Cal.4th 145, 153 [48 Cal.Rptr.2d 77, 906 P.2d 1232] [preemption doctrine applies to sentence enhancements as well as substantive offenses].)

Neither test is met here. First, as discussed in the preceding part, the elements of the two offenses are not coextensive. Most significantly, aggravated assault requires the commission of an act which by its nature would directly and probably result in the application of force to a person. (*People v. Williams, supra,* 26 Cal.4th 779.) Section 192 does not contain a comparable requirement.

Under the second test, defendant argues it is apparent from the statutory context that a violation of section 192 will necessarily or commonly result in a violation of section 245. We disagree. Section 192, subdivision (b), contains two distinct clauses, one dealing with death resulting from unlawful acts (misdemeanor manslaughter), and the other dealing with death resulting from otherwise lawful acts committed without due caution and circumspection (criminally negligent manslaughter).

■ Because aggravated assault is an *unlawful* act, criminally negligent manslaughter, which is based on a *lawful* act done without due caution and circumspection, would not necessarily or commonly result in an aggravated assault.

The misdemeanor manslaughter clause of section 192 applies whenever the victim's death results from a misdemeanor that is "dangerous to human life under the circumstances of its commission." (*People v. Garcia* (2008) 162 Cal.App.4th 18, 27 [74 Cal.Rptr.3d 912].) While aggravated assault would qualify as a predicate misdemeanor, it is only one of many that may support a conviction under section 192. (See, e.g., *People v. Stuart* (1956) 47 Cal.2d 167, 174 [302 P.2d 5] [preparing, compounding, or selling an adulterated or misbranded drug]; *People v. Southack* (1952) 39 Cal.2d 578, 584 [248 P.2d 12] [brandishing a firearm]; *People v. Ramirez* (1979) 91 Cal.App.3d 132, 139–140 [153 Cal.Rptr. 789] [carrying a loaded firearm in a public place]; *People v. Villalobos* (1962) 208 Cal.App.2d 321, 326 [25 Cal.Rptr. 111] [child endangerment].) Therefore, it cannot be said a violation of section 192 would necessarily or commonly result in a violation of section 245. In other words, while a violation of section 192 *can* result in a violation of section 245, this will not necessarily or commonly be the case given the numerous ways in which section 192 can be violated.

■ Section 192 is more specific than section 245 in providing punishment based on a given *result* of a crime, i.e., death, but more general in regulating the *conduct* that provides the basis for that crime. Consequently, we are unable to identify either statute as " 'the more specific so as to supplant the other.' " (*People v. Parrish* (1985) 170 Cal.App.3d 336, 346 [217 Cal.Rptr. 700].)

Defendant maintains that even if the tests outlined above for preemption are not met, the doctrine may still apply "because legislative intent favors conviction for some degree of homicide when the victim dies from aggravated assault." However, defendant provides no support for this contention. Where a point is raised in an appellate brief without argument or legal support, "it is deemed to be without foundation and requires no discussion by the reviewing court." (*Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 [199 Cal.Rptr. 72].)

In any event, defendant is incorrect. When neither test is met, the preemption doctrine is inapplicable and does not mandate further inquiry into legislative intent. Defendant was validly prosecuted under both section 192, subdivision (b), and section 245, subdivision (a)(1).

## DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 21, 2009, S168600.