Filed 12/29/20 P. v. Simon CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TRUMAN DARNELL SIMON,<br><br>    Defendant and Appellant. | F078189<br><br>(Super. Ct. No. RF007944A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. Gregory A. Pulskamp, Judge.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Kathleen A. McKenna, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Truman Darnell Simon was involved in altercation at a bar. After the altercation he, along with two other men, confronted the victim regarding the events at the bar. During the confrontation, one of the men accompanying Simon produced a firearm and

**SEE DISSENTING OPINION**

threatened the victim's life. Simon was convicted of aiding and abetting assault with a firearm and criminal threats.

Simon now argues the evidence was insufficient to sustain the convictions. We agree. The evidence failed to sufficiently prove he knew of and intended to assist the gunman's crimes. The judgment is reversed.

## BACKGROUND

**Charges**

The Kern County District Attorney charged Simon with two crimes: Assault with a firearm (Pen. Code,[1] § 245, subd. (a)(2)) and criminal threats (§ 422). The charges included three enhancement allegations: A prior strike conviction (§§ 667, subds. (b)-(i) & 1170.12, subds. (c)-(j)), a prior serious felony conviction (§ 667, subd. (a)), and a prior prison commitment (§ 667.5, subd. (b)).

**Trial Evidence**

Simon, his brother Royontae Elliot, and Isaachar Ray were involved in a physical altercation with other people at a bar after midnight. A police officer patrolling the area noticed the fight and detained the three men. The officer pat-searched them for weapons but found none. The men were ultimately released.

Around an hour later, Simon and two males started "banging" on the front door to a residence "within walking distance" of the bar. The eventual victim answered the door and saw three men standing in a "half circle." The trio started yelling at the victim; Simon was the most vocal. It was clear the trio was looking for someone other than the victim but still wanted to know if he was "connected" to the incident at the bar.

"Almost right away," the man in the back brandished a firearm, pointed it at the victim, and asked him if he was ready to die. The conversation continued for "about ten minutes" before the commotion awakened the victim's mother. She confronted the trio,

---

[1] Undesignated statutory references are to the Penal Code.

2.

asked why "they" had a "gun," and told them to leave. As the trio complied by dispersing, Simon apologized.

Nearly 20 minutes later, law enforcement detained Simon and Ray near Elliot's apartment. The apartment is down the street and visible from the victim's house. Afterwards, Elliot was detained in the same location. The victim's mother identified the three men as the same men she confronted outside her home.

Law enforcement subsequently searched Elliot's apartment "for … anything that would indicate that a possible firearm could have been" present. The search was fruitless.

**Verdict and Sentence**

Simon and Elliot were tried as direct aiders and abettors. Ray was the alleged gunman. Elliot and Ray were acquitted but Simon was convicted of both crimes. The court found his prior conviction allegations true. He was sentenced to serve 11 years in state prison.

## DISCUSSION

Simon claims his convictions are supported by insufficient evidence. As noted, he was tried as a direct aider and abettor.[2] After carefully reviewing the record, we conclude the evidence is insufficient to prove he aided and abetted the alleged crimes.

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the

---

[2] There are two distinct forms of aiding and abetting liability. One, a person is liable for aiding and abetting intended crimes. Two, a person is liable for aiding and abetting intended crimes *and* any other reasonably foreseeable crimes. (*People v. Chiu* (2014) 59 Cal.4th 155, 158.) The latter theory was not presented to the jury and is not at issue.

3.

defendant guilty beyond a reasonable doubt." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) "We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence." (*Ibid*.) "We cannot, however, go beyond reasonable inferences into the realm of speculation, conjecture, surmise, or guesswork." (*People v. Perez* (2017) 18 Cal.App.5th 598, 607.)

"To prove that a defendant is an [aider and abettor] the prosecution must show that the defendant acted 'with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' " (*People v. Gomez* (2018) 6 Cal.5th 243, 279.) " 'When the offense charged is a specific intent crime, the accomplice must "share the specific intent of the perpetrator"; this occurs when the accomplice "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." ' " (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118.)

The evidence here is insufficient to prove Simon was an aider and abettor for two independent reasons: (1) there is no evidence he shared the gunman's criminal purpose, and (2) there is no evidence he intended to aid and abet any crimes.

The prosecution's inability to definitively prove the gunman's identity and to locate the brandished firearm are fatal defects in the evidence. Without this evidence, Simon's relationship to the gunman is unknown. The lone reasonable inference the evidence permits is that their relationship was amicable due to the simple fact they were together. Simply knowing a person does not impute knowledge of that person's criminal purpose. Without establishing a more definitive relationship, inferring Simon was aware of and shared the gunman's criminal purpose is not reasonably possible.[3] Guilt by mere association is not guilt beyond a reasonable doubt.

---

[3] In contrast, for example, two individuals with a proven history of repeatedly committing specific crimes together, utilizing a common plan or scheme, and which

Simon is likewise not linked to the firearm. There is no evidence he owned the firearm or possessed it at some point prior to or after the crimes. His awareness of the firearm is a prerequisite necessary to reasonably infer he shared the gunman's criminal purpose. But inferring his knowledge of its presence in this case invites unwarranted speculation.

Indeed, the record discloses no evidence Simon was aware of the firearm while the crimes were committed. The testimony indicates the gunman was behind Simon without any further detail. There is no evidence the firearm was visible to Simon. And the threat itself did not reference the firearm.[4] Consequently, inferring his knowledge of the firearm's presence is unreasonable. Without that inference, proving the shared criminal purpose element is not possible.[5]

Similarly missing is any evidence consistent with a criminal intent. There is no evidence Simon personally committed any crimes at the victim's house. His presence alone does not prove aiding and abetting. (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055; see *People v. Lewis* (2001) 26 Cal.4th 334, 369 [evidence of presence and "intimate knowledge" of crimes alone cannot distinguish an accomplice from a mere

---

crimes exhibit distinctive or hallmark features might well permit the inferences necessary to prove aiding and abetting a crime. (E.g. *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 152 ["prosecution's argument … that it was probable [defendants] acted in concert[] because they had a history of doing so … was a proper argument based upon reasonable inferences"].) No such evidence is presented here.

[4] There is evidence the victim's mother confronted the group about the firearm. But at that point the gunman was "just holding" the firearm and the assault was already complete. Knowledge of the firearm after the crimes were complete, without more, does not alter the analysis.

[5] Because the evidence does not prove Simon shared the gunman's criminal purpose, it necessarily cannot prove his intent to commit the crimes. An individual cannot intend to aid and abet another person's crime without first knowing what crime that person intends to commit. We nonetheless separately examine the evidence relating to intent to aid and abet.

eyewitness because it is insubstantial and speculative].) Neither can his "failure to take action to prevent a crime …."[6] (*People v. Lara* (2017) 9 Cal.App.5th 296, 322.)

The record does, of course, establish Simon went to the victim's house for a purpose related to the incident at the bar. And the jury could reasonably believe he had an amicable relationship with the gunman. But confronting a person, even while angry, is not inherently criminal. Simon's decision to go to the victim's house for a confrontational purpose is unquestionably distinct from deciding to go there with a specific criminal purpose intent on committing crimes. Without evidence connecting him to the gunman or the firearm it is impossible to infer, beyond a reasonable doubt, the requisite intent to aid and abet necessary to prove the crimes.[7]

In sum, there is no reasonable, credible, and solid evidence Simon shared the gunman's criminal purpose, knew of the firearm's presence, or intended to aid and abet any crime. Concluding otherwise would require conjecture and speculation. Accordingly, the evidence was insufficient to prove the crimes.

---

[6] The People argue "[t]here was no evidence that [Simon] objected or tried to distance himself from the group after the gunman pulled out the firearm and threatened" the victim. A similar argument was advanced in the trial court. As mentioned, there is no evidence Simon was aware of the firearm before the assault was complete. Neither is there evidence he could prevent the threat. Although the record discloses the threat was made "more than once" there is no further explanation. Uttering the threat completed the crime. To conclude Simon had the opportunity to prevent either crime but actively chose not to would require engaging in impermissible conjecture.

[7] We note that flight from the crime scene is also relevant to determining an alleged aider and abettor's guilt. (*In re Gary F.* (2014) 226 Cal.App.4th 1076, 1080.) Here, Simon did not flee. Rather, he left the crime scene—while apologizing—at the victim's mother's request. And he did nothing to conceal his participation in a crime which would suggest a guilty conscience. As far as the record reveals, he was entirely cooperative with law enforcement during his detention, identification, and arrest. This conduct is not consistent with aiding and abetting a crime. (See *id.* at p. 1081 [relevant factors include " 'conduct before and after the offense' "].)

6.

## **DISPOSITION**

The judgment is reversed. Upon remand the trial court is directed to vacate the convictions and enter a judgment of acquittal on each count.

SNAUFFER, J.

I CONCUR:

SMITH, J.

7.

POOCHIGIAN, Acting P.J., Dissenting.

I respectfully dissent from the majority opinion's reversal of the judgment. It is a close question, but I agree there is insufficient evidence Simon knew one of his companions possessed a gun and aimed it at Hernandez. While Simon's conviction in count 2 for criminal threats is not supported by substantial evidence, I would reduce his conviction in count 1 for assault with a deadly weapon to the lesser included offense of simple assault, because there is substantial evidence to support Simon's conviction as an aider and abettor of assault.

"A 'person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.' [Citation.]" (*People v. Marshall* (1997) 15 Cal.4th 1, 40; *People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.) In determining the requisite intent, " '[e]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' [Citation.]" (*Nguyen,* at p. 1055.)

"[I]n general neither presence at the scene of a crime nor knowledge of, but failure to prevent it, is sufficient to establish aiding and abetting its commission. [Citations.] However, '[a]mong the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.' [Citation.]" (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409; *People v. Nguyen, supra*, 61 Cal.4th at p. 1054.) Whether defendant aided and abetted the crime is a question of fact, and on appeal all conflicts in the evidence and reasonable inferences must be resolved in favor of the judgment. (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1147–1148.)

"Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt

and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" (*People v. Bean* (1988) 46 Cal.3d 919, 932–933; *People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

First, the jury's not guilty verdicts for Ray and Elliot do not undermine Simon's conviction as an aider and abettor. "[F]or a defendant to be found guilty under an aiding and abetting theory, someone other than the defendant must be proven to have attempted or committed a crime; i.e., absent proof of a predicate offense, conviction on an aiding and abetting theory cannot be sustained." (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.) Hernandez consistently testified Simon was one of the men who confronted him at his house, Simon primarily did the yelling and shouting at him, and that Simon was not the man who pulled the gun and threatened him. By finding Simon guilty of the charged felony offenses of assault with a firearm and criminal threats, the jury necessarily found that the incident at Hernandez's house occurred, Simon was there with another man who threatened Hernandez, and Simon aided and abetted the gunman's repeated threats to kill him.

By finding Elliot and Ray not guilty, however, the jury found there was insufficient evidence to prove they were the two suspects who were with Simon that night. The record strongly implies the jury questioned the credibility of Ms. Ochoa's identifications of the two men because she incorrectly recounted the circumstances of the infield show ups and failed to tell officers that her daughter was also present and saw the suspects. More importantly, Hernandez refused to participate in the infield show ups. At trial, he positively identified Simon and explained their past acquaintance but, when asked if he recognized anyone in the courtroom who was the gunman, he said no.

2

Hernandez further testified he was "skeptical" whether Ray or Elliot came to his house with Simon that night.

There is, however, overwhelming evidence that Simon was one of the men who confronted Hernandez. Hernandez had previously met Simon, and thought everything would be okay when he opened the door because he immediately recognized him. Simon arrived at Hernandez's front door at 3:00 a.m. with two men and accused Hernandez of being involved in a fight at a bar. There is undisputed evidence that Simon was also at the nearby bar about an hour earlier and was involved in an altercation that started because he was talking to the wife of a Hispanic male. Simon was briefly detained and released, but his cousin was arrested for intoxication and taken to the police department.

Hernandez testified the three men were standing close together on the small front porch "like in a half circle" or a "little arc." Defendant stood on the right, the gunman was in "the middle in the back," and the third man was on the left side.

The three men were yelling and screaming at him, but Simon "was doing most of the talking for them. He was like, oh, they were at the bar, there was a bar fight, they went to jail or something. They were looking for some guy, which I do not remember the name, but they did say the name and somehow they were trying to connect me to everything which did not make any sense." The man with the gun pointed the weapon at Hernandez's chest "and said 'Are you ready to die?' "

The entirety of the record shows that Simon knew the two other men and intended to join them to angrily confront and threaten Hernandez based on their mistaken belief that he was somehow involved in the bar altercation. While all three men were shouting at Hernandez when he opened the front door, Simon did most of the yelling about the bar fight and someone getting arrested. In addition, the men knew Hernandez's name. Since Hernandez only knew Simon, it is reasonable to infer that Simon led his companions to Hernandez's house and told them his name.

3

The three men stood close together in a half circle in front of the door. Simon stood next to the gunman as the gunman repeatedly asked Hernandez whether he wanted to die that night. It was reasonable for the jury to find that Simon heard the man who was standing next to him repeatedly threaten Hernandez's life. It was also reasonable to find that Simon shared the direct perpetrator's intent since Simon's conduct was the reason for the bar fight, he led the men to Hernandez's house, and he was the person who was primarily accusing Hernandez of complicity in the bar fight.

There is insufficient evidence, however, that Simon knew one of his compatriots had a gun, intended to use the gun, or that he actually saw the man pull the gun and aim it at Hernandez. The verbal threats were consistent with Simon's conduct in leading the men to Hernandez's house, and his angry demeanor in accusing Hernandez of somehow being involved in the bar fight that resulted in their cousin's arrest. Hernandez testified the gunman stood in the middle, between Simon and the third man, but the gunman was slightly behind both of them. Based on their positions, Simon certainly must have heard the gunman threaten to kill Hernandez, but there is no direct or circumstantial evidence that Simon knew he pulled the gun or saw it aimed at Hernandez as the verbal threats were made.

Simon was convicted of count 2, criminal threats in violation of Penal Code section 422,[1] which requires proof that the threat "was 'on its face and under the circumstances in which it [was] made, … so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat.' " (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228.) Since there is insufficient evidence Simon knew his companion had a gun, Simon's conviction as an aider and abettor of criminal threats must be reversed as there is no

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

4

evidence that the gunman's threats against Hernandez had the immediate prospect of execution of the threat.

Simon was also convicted of count 1, assault with a firearm, in violation of section 245, subdivision (a)(2). "An assault is 'an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.' (§ 240.)" (*People v. Murray* (2008) 167 Cal.App.4th 1133, 1139.) An assault is aggravated when committed with a firearm. (§ 245, subd. (a)(2); *People v. Milward* (2011) 52 Cal.4th 580, 585; *In re Jonathan R*. (2016) 3 Cal.App.5th 963, 970; *People v. Cook* (2001) 91 Cal.App.4th 910, 920; *People v. Fuller* (1975) 53 Cal.App.3d 417, 421–422.)

Given the insufficiency of the evidence regarding Simon's knowledge and intent regarding the firearm, his conviction as an aider and abettor of count 1 must also be reversed. However, the California Supreme Court has "long recognized that under … sections 1181, subdivision 6, and 1260, an appellate court that finds that insufficient evidence supports the conviction for a greater offense may, in lieu of granting a new trial, modify the judgment of conviction to reflect a conviction for a lesser included offense." (*People v. Navarro* (2007) 40 Cal.4th 668, 671, fn. omitted; *People v. Bailey* (2012) 54 Cal.4th 740, 748.)

Simple assault (§ 240) is a lesser included offense of an aggravated assault or assault with a firearm. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747–748; *People v. Beasley* (2003) 105 Cal.App.4th 1078, 1086, 1088.) While there is insufficient evidence of assault with a firearm, there is overwhelming evidence that Simon was an aider and abettor to simple assault. Simon led his two companions to Hernandez's house because he believed Hernandez had been involved in the bar fight. They banged on the front door at 3:00 a.m. and initiated an angry confrontation. Simon did most of the yelling and shouting, and, while he may not have known about or seen the gun, he was standing next to and slightly in front of the man who repeatedly yelled at Hernandez

5

about whether he wanted to die.  There is substantial evidence to find that Simon aided and abetted the direct perpetrator's repeatedly stated intent to harm Hernandez based on their mistaken belief he had been involved in the bar fight.


POOCHIGIAN, Acting P.J.

6