Filed 2/28/19

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B286202 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA066096) |
| v. | |
| NEAL A. MATTHEWS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Daviann L. Mitchell, Judge. Affirmed with modifications.

Richard A. Levy, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant

_____

\* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts III (B)-(C), IV (A)-(B), V (A)-(C).

Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, and Thomas C. Hsieh, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

A trial court in a criminal case is charged with properly instructing the jury on the elements of all crimes and enhancements. (*People v. Tidwell* (1970) 3 Cal.3d 82, 87.) Does the trial court violate its duty to instruct—and potentially entitle the defendant to a retrial—if the court (1) tells the jury that the People have to prove an element that the law does not require, and (2) fails to properly define that element? We conclude that a mistake pertaining to a superfluous element does not constitute instructional error. In light of this conclusion, as well as our determinations that the trial court did not otherwise commit instructional error and that the prosecution did not commit misconduct, we affirm the murder conviction in this case. We nevertheless conclude that there are several sentencing errors that must be corrected, and remand for the trial court to consider whether the defendant has the ability to pay a restitution fine.

## FACTS AND PROCEUDRAL BACKGROUND

### I.    Facts

#### A.    *The crime itself*

On December 3, 1978, 20-year-old Leslie Long (Long) was working at a full-service gas station in Palmdale, California. Long was a mother of three, including a baby she was still nursing. As she finished her shift alone that evening, two men arrived at the station, demanded that she open the safe, and took between $600 and $1,200. The men abducted Long and drove her 10 to 12 miles outside of town to a secluded spot in the high desert surrounding Palmdale. Each man vaginally raped Long,

2

and one man anally raped her. Long was shot five times in the back of the head, "execution-style," and left for dead.

### B. *The "cold case" investigation*

More than 30 years later, law enforcement ran DNA tests on the sperm samples collected from Long's body and ran the results through its DNA database. There was a hit. Some of the DNA in Long's vagina belonged to Terry Moses (Moses), a long-time gang member and a repeat killer. When confronted with the DNA match, Moses initially refused to cooperate. Moses later changed his mind. In exchange for the People's promise not to seek the death penalty, Moses pled guilty to the murder of Long and several others, to be sentenced to five life sentences (three of which were without the possibility of parole), and to name the second man who was with him in December 1978. Moses first fingered a since-deceased man. But when law enforcement indicated its intent to exhume the deceased man's body to test for DNA, Moses admitted that his cohort was Neal Matthews (defendant). DNA tests confirmed that it was defendant's sperm in Long's vaginal and anal cavities.

## II. Procedural Background

### A. *Charges*

In the operative information, the People charged defendant with the first degree murder (Pen. Code, § 187)[1] of Long. The People alleged three special circumstances that, if true, would dictate a mandatory sentence of life without the possibility of parole (LWOP)—namely, that Long's murder was committed in the commission of the crimes of robbery, kidnapping and rape (§ 190.2, subds. (c)(3)(i), (c)(3)(ii) & (c)(3)(iii)). The People further

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

alleged that defendant "personally used a firearm" (§ 12022.5, subd. (a)) and that a principal was armed with a firearm (§ 12022, subd. (a)(1)). The People additionally alleged that defendant had three prior felony convictions that qualified as "strikes" under our Three Strikes Law (§§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d)).

### B. *First trial*

The matter proceeded to trial, but the jury hung 11-1 in favor of guilt after the jurors reported the 12th juror refused to deliberate.

### C. *Retrial*

The matter proceeded to a second jury trial.

The prosecutor read into the record defendant's testimony from the first trial. In that testimony, defendant stated that (i) Long had voluntarily accompanied Moses on the 75 mile trip from Palmdale to Los Angeles so that Moses could buy angel dust at the place where defendant was staying; (ii) defendant raped Long while she was alone with him in the kitchen; and (iii) Long thereafter left with Moses, which was the last time defendant ever saw her. Defendant acknowledged that the statute of limitations had expired on the 1978 rape, so admitting the rape subjected him to no criminal liability.

The court instructed the jury on two theories of criminal liability for Long's murder—namely, that (1) defendant himself committed the killing with "malice aforethought," and (2) defendant was liable under a felony-murder theory because Long was killed during the commission of the robbery or rape defendant aided and abetted. The jury was also instructed on the special circumstance.

4

The jury found defendant guilty of Long's murder, found all three special circumstances to be true, and found that a principal was armed with a firearm. The jury rejected the allegation that defendant personally used a firearm.

Defendant waived his right to a jury trial on his prior convictions, and the trial court subsequently found them to be true.

### D.    *Sentencing*

The trial court sentenced defendant to prison for life without the possibility of parole. The court also imposed a $10,000 restitution fine, a $10,000 parole revocation fine, and ordered that a hearing be set for restitution to the victim and her family. The court awarded 901 days of actual pre-sentence custody credit, and no conduct credits.

### E.    *Appeal*

Defendant filed a timely notice of appeal.

## DISCUSSION

In this appeal, defendant argues that the special circumstance finding must be overturned due to three instructional errors; that his underlying murder conviction is invalid due to prosecutorial misconduct; and that the trial court committed a number of sentencing errors.

## III.  Instructional Errors

Defendant launches three separate attacks on the correctness of the special circumstance jury instruction. We independently review such challenges. (*People v. Hamilton* (2009) 45 Cal.4th 863, 948.)

### A.    *Failure to define "physically aided"*

Defendant first contends that the special circumstance instruction is invalid because (1) the jury was instructed under

the 1977 version of the special circumstance statute, which requires that the People prove, among other things, that "the defendant *physically aided* or committed [the] act or acts causing [Long's death]" (former § 190.2, subd. (c), italics added); (2) the jury was not instructed that a defendant "physically aid[s] or commit[s] [the] act or acts causing death," under the 1977 version, only if "his conduct constitutes an assault or battery upon the victim or if by word or conduct he orders, initiates, or coerces the actual killing of the victim" (former § 190.2, subd. (d), as set forth in *Carlos v. Superior Court* (1983) 35 Cal.3d 131, 139 (*Carlos*), overruled on other grounds in *People v. Anderson* (1987) 43 Cal.3d 1104, 1138-1147); and (3) the trial court's failure to use the statutory definition is error because it differs significantly from the "commonly understood" meaning of the phrase "physically aided" (*People v. Johnson* (2015) 234 Cal.App.4th 1432, 1456 [court should instruct on "particular meaning" of phrase defined by statute]; *People v. Griffin* (2004) 33 Cal.4th 1015, 1022-1023).  The People respond that the trial court's failure to define "physically aided" is irrelevant because the 1978 version of the statute—which was the version in effect on the date of Long's murder—eliminated the requirement of "physical aiding."  (Stats. 1977, ch. 316, §§ 1-26, pp. 1255-1266; *Carlos*, at pp. 140, 143; see *People v. Murtishaw* (2011) 51 Cal.4th 574, 586 [noting that 1978 version of special circumstances statute became effective on November 8, 1978].)

This case accordingly tees up the question:  If a trial court mistakenly instructs the jury that the People must prove a fact as an element of a crime but does not properly define that fact, does that failure constitute instructional error when that fact is not— in actuality—an element of the crime?  In other words, does a

mistake in instructing the jury on a superfluous "element" of a crime constitute instructional error?

We conclude the answer is "no," and do so for three reasons.

First and foremost, what matters to the validity of a conviction is whether the jury is correctly instructed on the *elements* of a crime—that is, on those "fact[s] that, by law, increase[] the penalty for a crime. (*Alleyne v. United States* (2013) 570 U.S. 99, 103.) Those elements are defined by the statute(s) in effect on the date of the charged crime. (*People v. Anderson* (2009) 47 Cal.4th 92, 101 ["'Every crime consists of a group of elements laid down by the statute or law defining the offense . . .'"]; *People v. Gardeley* (1996) 14 Cal.4th 605, 615 ["consider[ing] the version of the statutory provisions . . . in effect" at the time the "crimes . . . took place"], overruled on other grounds in *People v. Sanchez* (2016) 63 Cal.4th 665.) As a result, mistakes in instructing on facts that are *not* elements do not undermine the validity of a conviction. If, for instance, a trial court mistakenly instructed a jury that the elements of murder are (1) the unlawful killing of a human being, (2) with malice aforethought, (3) when the moon is made of cheese, no court in California would overturn that murder conviction merely because the court failed to define what *kind* of cheese the moon had to be. The same result obtains here.

Second, a rule providing that defects in superfluous "elements" invalidate a conviction leads to further problems that are best avoided. Such a rule effectively allows a judge's mistake in listing the elements of a crime to *redefine* those elements. This ostensibly transgresses the separation of powers, which ascribes the task of *defining* crimes solely to the legislative branch. (*In re Brown* (1973) 9 Cal.3d 612, 624 ["In California all crimes are

7

statutory and there are no common law crimes. Only the Legislature and not the courts may make conduct criminal."].) Such a rule effectively creates a "greater included" offense comprised of the statutory elements plus the superfluous element, and then puts the jury to an all-or-nothing choice of finding defendant guilty of this newly created offense or acquitting him of all criminal conduct. This ostensibly transgresses the rule that eschews "forc[ing] the jury to make an 'all or nothing' choice between conviction of [a greater crime] or complete acquittal." (*People v. Barton* (1995) 12 Cal.4th 186, 196.) Just as a jury must be permitted to convict a defendant of a lesser included offense, so must a "lesser" conviction for the crime defined by its actual statutory elements be permitted to stand. Such a rule also effectively erects a game of "procedural gotcha": Mess up the elements by adding an extra one, and—"gotcha"— now you have to properly instruct on that superfluous element on pains of reversal, even though reversal undermines the People's "legitimate interest" in upholding a conviction for which all statutorily required elements are found beyond a reasonable doubt (see *People v. Breverman* (1998) 19 Cal.4th 142, 155; *People v. St. Martin* (1970) 1 Cal.3d 524, 533).

Third, the cases that have considered related issues are consistent with the holding we reach today. In *People v. Dayan* (1995) 34 Cal.App.4th 707 (*Dayan*), the appellate court upheld a conviction for misdemeanor sexual battery notwithstanding the trial court's mistake in instructing the jury with the narrow definition of "touching" applicable to felony sexual battery. The court squarely rejected the "startling proposition" advanced by the defendant that "a conviction must be reversed" "if a court's instruction erroneously *adds* an element to an offense." (*Id.* at p.

8

717.) Our Supreme Court cited *Dayan'*s analysis on this point favorably in *People v. Santana* (2013) 56 Cal.4th 999, when it ruled that the mistaken addition of a "serious bodily injury" requirement to the crime of mayhem "did not prejudice defendant." (*Id.* at p. 1011.) And the United States Supreme Court in *Musacchio v. United States* (2016) 136 S.Ct. 709 (*Musacchio*) unanimously held that "when a jury instruction sets forth all the elements of the charged crime but incorrectly adds one more element, a sufficiency [of the evidence] challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction." (*Id.* at p. 715.) Defendant urges that *Dayan* is not directly on point because the instructional mistake in that case was not due to a mix-up as to which *version* of a statute to apply, and that *Musacchio* analyzed the sufficiency of the evidence, not an instructional error. But we do not see how the reason *why* a superfluous "element" is added matters. And whether or not *Dayan*, *Santana* and *Musacchio* *dictate* the result we reach, they are undoubtedly *consistent* with it.

Defendant makes three arguments in response.

First, he argues that the People, in proposing the version of the special circumstance statute with the "physically aided" element, elected between the 1977 and 1978 versions of the statute and must be held to that election. To be sure, when the People elect between one of two statutory methods of proving a crime (*People v. Centers* (1999) 73 Cal.App.4th 84, 91-92) or between one of several factual theories for proving an element of a crime (*People v. Mabini* (2001) 92 Cal.App.4th 654, 657-658; *People v. Nunez & Satele* (2013) 57 Cal.4th 1, 37), the People will be held to that election. But this principle applies when the

9

People are choosing among statutorily authorized ways of proving a crime. This principle does not by its terms or rationale extend to the choice between proving a statutorily authorized crime and something *other than* the statutorily authorized crime. Defendant also cites *In re Stankewitz* (1985) 40 Cal.3d 391 in support of this argument, but that case dealt with a *juror*'s injection of outside information into jury deliberations. (*Id.* at pp. 399-400.)

Second, defendant contends that the state of Washington's "law of the case" doctrine obligates the People to prove a superfluous "element" if the People mistakenly submit an instruction that contains that element. (*State v. Johnson* (Wash. 2017) 188 Wash. 2d 742, 756; *State v. Hickman* (Wash. 1998) 135 Wash. 2d 97, 102.) Because California also has a "law of the case" doctrine, defendant reasons, we should adopt the same rule as Washington. We reject this argument because its central premise—that California's law of the case doctrine is the same as Washington's—is wrong. Washington applies its law of the case doctrine whenever the People include an "element" in an instruction without objection. (*Johnson*, at p. 756.) California's law of the case doctrine, however, only applies when a higher appellate court has passed on an issue (*People v. Gray* (2005) 37 Cal.4th 168, 196-197; accord, *Musacchio, supra*, 136 S.Ct. at p. 716 [federal law of the case doctrine does not apply when "an appellate court assesses a lower court's rulings"].) More to the point, California's doctrine—unlike Washington's—does *not* bind an appellate court to follow an "erroneous [jury] instruction." (*O'Neill v. Thomas Day Co.* (1907) 152 Cal. 357, 361-362.) The closest analogue to Washington's law of the case doctrine is California's "invited error" doctrine, but that binds a litigant only

10

when that litigant "mislead[s] the trial court" or otherwise engages in "affirmative conduct demonstrating a deliberate tactical choice." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403; *Huffman v. Interstate Brands Corp.* (2004) 121 Cal.App.4th 679, 706.) Contrary to what defendant suggests, nothing indicates that the People's mistaken reliance on the wrong version of the special circumstance statute was meant to mislead the court or evinced a deliberate tactical choice; nor would it, as there was no advantage to be gained from using that version.

Lastly, defendant asserts for the first time in his reply brief that the trial court's failure to define the superfluous "element" somehow reduced the People's burden of proof. As explained above, any reduction in the burden of proving a fact the People were not statutorily required to prove is not a cognizable statutory or constitutional error.

**B.** *Failure to include intent to kill element in pretrial jury instructions*

Defendant next contends that the special circumstance instruction is invalid because the trial court, when explaining the special circumstance at the beginning of trial, did not tell the jury that the People must prove that the defendant must aid and abet the kidnapping, robbery or rape "with [the] specific intent to cause death."

Defendant is correct that the court's pretrial instruction omitted the "intent to cause death" element, but this does not constitute error for two independent reasons. First, the court included the "intent to cause death" element in its *final* instructions to the jury on this special circumstance. We must "evaluate the instructions as a whole, not in isolation" (*People v. Nelson* (2016) 1 Cal.5th 513, 544), recognizing that "[t]he absence of an essential element from one instruction may be cured by

11

another instruction or [by] the instructions as a whole." (*People v. Smith* (2008) 168 Cal.App.4th 7, 13, citing *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248.) Applying these standards, there was no error because end-of-trial instructions cured any defect with the pretrial instruction. (See *People v. Dunkle* (2005) 36 Cal.4th 861, 928-929 [error in pretrial instruction cured by correct instruction at the end of trial], overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421; *People v. Livaditis* (1992) 2 Cal.4th 759, 780-781 [same].) What is more, the trial court told the jury it would receive "*final*" "instructions" after the jury heard all the evidence, and when the trial court gave its final instruction containing the "intent to cause death" element in this case, the court emphasized the finality of *that instruction* by handing out hard copies of that instruction and by collecting the hard copies of the pretrial instructions it had previously distributed to the jurors. Second, "intent to cause death" was not an element of the special circumstance as applied to the 1978 murder in this case because it was an element only during the window between 1983 and 1987 (*People v. Bolden* (2002) 29 Cal.4th 515, 560 [so noting]).

Defendant argues that the trial court's pretrial instruction must be given dispositive weight because, in his view, jurors are at a "heigh[tened]" state of "attent[ion]" at the beginning of trial and end up having the pretrial instructions in their hands for the whole duration of the trial. As a result, defendant urges, the only way an error in a pretrial instruction may be cured by a correct end-of-trial instruction is if the court expressly tells the jury to disregard the pretrial instruction or points out how the end-of-trial instruction is different. This argument not only ignores that courts must read the instructions as a whole, but also ignores

12

that the trial court's substitution of the hard copies of the final instructions for the initial instructions was a pretty strong indication as to which set of instructions was to be used in the jury room.  "[W]e presume that jurors are intelligent individuals who are capable of understanding instructions and applying them to the facts of the case before them" (*People v. Hajek & Vo* (2014) 58 Cal.4th 1144, 1246, overruled on other grounds in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216) and decline to read the instructions in a manner that assumes the jurors would impermissibly fixate on language in a set of instructions that the trial court replaced with a new set.

**C.    *Failure to instruct that the kidnapping and rape of Long must be "incidental" to her murder***

Defendant further argues that the special circumstance instruction was legally incorrect because the court did not tell the jury, in its posttrial instructions, that a murder is committed in the course of a felony—and that the special circumstance is consequently true—only if that felony is the "primary crime" rather than "incidental" to the murder.

The 1978 version of the special circumstance applies only if the charged "murder was committed while the defendant was engaged in or was an accomplice in the commission of" one of several felonies, including robbery, rape and kidnapping. (Former § 190.2, subd. (a), as set forth in *Carlos*, *supra*, 35 Cal.3d at p. 140.)  However, the special circumstance has a limitation—namely, it applies only if the robbery, kidnapping or rape is the "primary crime" or is a concurrent crime rather than being merely "incidental to the murder"; a robbery, kidnapping or rape is "incidental" if its "sole object" "is to facilitate or conceal" the murder.  (*People v. Green* (1980) 27 Cal.3d 1, 61 (*Green*), overruled on other grounds in *People v. Martinez* (1999) 20

Cal.4th 225, 241; *People v. Navarette* (2003) 30 Cal.4th 458, 505 (*Navarette*); *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 851 [circumstance applies "so long as defendants had 'a concurrent purpose to commit both the murder'" and the other felony]; *People v. Rundle* (2008) 43 Cal.4th 76, 156 [the rape or kidnapping must "not merely [be] an afterthought to the murder"], overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421.)  A trial court is required to instruct on this limitation only "where the evidence suggests"—that is, when "'the evidence supports an inference'"—that the robbery, kidnapping or rape was "merely incidental to achieving the murder."  (*People v. D'Arcy* (2010) 48 Cal.4th 257, 296-297; *People v. Hardy* (2018) 5 Cal.5th 56, 102.)

In this case, the evidence does not support an inference that the robbery, kidnapping and rape of Long was "incidental" or an "afterthought" to murdering her.  The jury found defendant guilty of murder, so we take as a starting point that defendant was present with Moses during the robbery and the events that occurred thereafter.  Moses testified that the two men traveled to Palmdale to rob a gas station, so the robbery was certainly not incidental to Long's subsequent murder.  The evidence further established that they drove Long—along with some of the money bags from the gas station—out to a secluded area, and only there repeatedly raped her.  Then, and only then, did one of the men put five bullets in her skull.   On these facts, the murder was a way to conceal—and hence, incidental to—the robbery, kidnapping and rape; not the other way around.  On similar facts, courts have consistently found no need to instruct on the "incidental" limitation.  (See *People v. Wright* (1990) 52 Cal.3d 367, 417 [murder to prevent victim from reporting other crimes;

not incidental], overruled on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459; *People v. Prieto* (2003) 30 Cal.4th 226, 257 [murder after defendants robbed, kidnapped and raped victims; at most, concurrent intent to kill and commit other crimes, so not incidental]; cf. *People v. Brooks* (2017) 3 Cal.5th 1, 118 [plan all along was to murder victim; other crimes incidental]; *People v. Marshall* (1997) 15 Cal.4th 1, 40-41 [defendant took items from deceased as a token; robbery was incidental]; *Green, supra,* 27 Cal.3d at pp. 61-62 [defendant took items from deceased to burn after murder; robbery was incidental].)

Defendant makes three sets of arguments in response. First, he argues that the jury could have disbelieved portions of Moses's testimony indicating that they committed the kidnapping and rape opportunistically. While juries may disregard all or part of a witness's testimony (*In re Hamilton* (1999) 20 Cal.4th 273, 296-297, fn. 18), this does not aid defendant because factoring out Moses's testimony does not place into the "record . . . significant evidence of any motive for the murder[] other than" the robbery, kidnapping and rape. (*Navarette, supra,* 30 Cal.4th at p. 505; cf. *People v. Morris* (1988) 46 Cal.3d 1, 21 [a "reasonable inference" may not be based on speculation], overruled on other grounds in *In re Sassounian,* 9 Cal.4th 535, 543.) Second, defendant argues that he did not realize in 1978 that the DNA in his sperm could be used to identify him or that the felony-murder might apply to his conduct. We do not understand how the defendant's subjective awareness of his criminal liability for the special circumstance-related crimes has any bearing on the instructional issue he raises. Lastly, defendant urges that he kidnapped and raped Long to facilitate

15

her murder.  However, the evidence does not raise any reasonable inference to support this theory.  If anything, and as noted above, all of the evidence points the other way.

## IV.    Prosecutorial Misconduct

Defendant argues that prosecutor violated his due process rights by engaging in misconduct during closing argument.  A prosecutor's conduct violates federal due process if that conduct "'"'infects the trial with such unfairness as to make the conviction a denial of due process.'"'" (*People v. Adams* (2014) 60 Cal.4th 541, 568.)  A prosecutor's conduct violates due process under California law "'"'only if [the conduct] involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury.' [Citation.]'"'" (*Ibid.*)  A prosecutor's remarks to the jury during closing argument may rise to the level of misconduct, but only if "'the defendant . . . show[s] a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.' [Citation.]" (*People v. Dykes* (2009) 46 Cal.4th 731, 771-772 (*Dykes*); *People v. Samayoa* (1997) 15 Cal.4th 795, 841.)  We "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*Dykes*, at p. 772.)  We review claims of prosecutorial misconduct for an abuse of discretion.  (*People v. Peoples* (2016) 62 Cal.4th 718, 792-793.)

### A.    *Pertinent facts*

During his closing argument to the jury, defendant urged the jury that he was not liable for Long's death under a felony-murder theory because, under his version of the events, he finished raping Long hours before Moses (and Moses alone) drove her back to Palmdale and then killed her.  He noted that the

16

"felony-murder rule" holds a person "liable for" a death "when you have an act occur and during that act there's a death," but went on to state that "it's pretty clear that these words don't mean that you're liable for anything and everything until the end 'cause that's what the prosecution *wants you to believe*."  (Italics added.)  He closed by emphasizing that the prosecution was "attempting to expand" the felony-murder rule by "basically saying you're on the hook no matter how long."

The prosecutor responded to this line of argument on rebuttal:

"I want you to know, before you go back to deliberate, I don't want you to believe anything.  I really don't.  If you don't believe anything I've said, you want to disregard all of the law and say . . . Moses got up here [and] took five life terms, three LWOPs . . . and is lying to you altogether and you want to believe that when the instruction says "'in the commission of' or synonymous with 'in the course of'" goes all the way to when they're trying to avoid detection, the crime is not over.

"If you want to say that when the instruction says defendant's home is not even a place of safety until the victim is dead, that, that is not really what the instruction says because [defense counsel] knows whoever wrote the instruction, what they meant somehow, and now he's telling you to believe him because that instruction doesn't apply even though it's in front of you in black and white, and the judge has given it to you.  Okay.

17

"But I'm not asking you to believe it.  I don't want you to believe anything.  You listen to the facts.  You read the law, and that's what I want you to determine.  I don't want you to believe anything.  If you don't believe anything I've said, if you don't believe anything that . . . Moses said and you want to disregard the law, find this man, find this murderer not guilty.  Find him not guilty.  Doesn't take but five minutes.  Go in there, write, "Not Guilty," and come out.  I'm going to [go] home at the end.  It's not what I want.  It's not what I want.  I'm just arguing what the facts are showing you.  I'm just arguing how the facts apply to the law.  If you don't believe me, disregard it.  Find him not guilty if you don't believe me.  If you want to disregard the law that you took an oath to follow.  You would have to disregard [the jury instruction] not to find him guilty of felony murder.  You would have to disregard it.

"I'm not saying what it says.  Read it.  You don't believe . . . Moses, just take what he said.  Have it read back.  Just take what he said."

**B.    *Analysis***

1.    *Forfeiture*

"'To preserve a claim of prosecutorial misconduct for appeal, a criminal defendant must make a timely objection, make known the basis of his objection, and ask the trial court to admonish the jury.'" (*People v. Pettie* (2017) 16 Cal.App.5th 23, 74, quoting *People v. Brown* (2003) 31 Cal.4th 518, 553.)  A defendant's failure to object will be excused only if (1) "[t]he objection or the request for an admonition would have been

18

futile," or (2) "the admonition would have been insufficient to cure the harm occasioned by the misconduct." (*Ibid*.)

Defendant did not object to the portions of the prosecutor's rebuttal argument that he now challenges on appeal. Nor has defendant established that his failure to object is excused. Nothing in the record indicates that an objection or request for admonition would have been futile, as the trial court entertained and sustained other objections by defendant to the prosecutor's rebuttal argument. Nor, as we discuss below, is the argument so improper and so egregious that an admonition would be insufficient to cure the harm.

    2.  *Merits*

The prosecutor's argument did not constitute misconduct. She was arguing to the jury that the facts and the law together supported only one plausible conclusion—namely, guilt. Prosecutors may permissibly argue that a defendant's position is "implausible in light of the physical evidence" at trial and the law. (*People v. Lucas* (1995) 12 Cal.4th 415, 475 (*Lucas*).) The prosecutor went on to emphasize that the only way the jury could reach the contrary, implausible conclusion was by violating their oath to follow the law as instructed by the court. In this context, a prosecutor's reference to the jurors' oath was not misconduct. (*People v. Harris* (1934) 219 Cal. 727, 732-733 (*Harris*) [no misconduct for prosecutor to argue that juror would violate their oath if they did not return a guilty verdict].) Even if this argument might have hewn too close to the line of what is impermissible had it been part of the prosecutor's *initial* closing argument, it is well settled that "a prosecutor is justified in making comments in rebuttal, perhaps otherwise improper, which are fairly responsive to argument of defense counsel and

are based on the record." (*People v. Hill* (1967) 66 Cal.2d 536, 560.)

Defendant makes four arguments in response.

First, he asserts that the prosecutor was threatening the jurors with imprisonment if they did not return a guilty verdict because (1) the prosecutor mentioned the jurors' oath and that *she* would get to "go home" no matter what verdict the jury returned; and (2) the trial court at the outset of the trial told the jurors that researching the case or communication with others about the case "may . . . subject [the jurors] to jail time, a fine, or other punishment." Read together, defendant reasons, the prosecutor was subtly suggesting that the jurors would be imprisoned—and thus *not* able to go home—unless they returned a guilty verdict. Threatening a jury with incarceration, defendant concludes, is misconduct. (E.g., *People v. Sanchez* (2014) 228 Cal.App.4th 1517, 1529.) It is not reasonably likely that the jury would have connected the prosecutor's reference to the jurors' oath or her lack of personal stake in the outcome of the trial with a pretrial instruction given days earlier and dealing with a different prohibition of juror misconduct, and thus not reasonably likely that the jury would have taken the prosecutor's argument as a conditional threat of imprisonment.

Second, defendant contends that the prosecutor was engaged in impermissible vouching because she at one point called the defendant a "murderer" and because the prosecutor's entreaties that she did not want the jury to believe anything were a rhetorical device aimed at suggesting precisely the opposite. (See *People v. Wrest* (1992) 3 Cal.4th 1088, 1107 [noting "paraleipsis" is a "rhetorical device" where a person "strategically phrase[s]" "what he [is] *not* arguing" as a means of arguing those

20

precise points].)  There was no impermissible vouching.  A prosecutor impermissibly vouches when he or she suggests "personal knowledge of the defendant's guilt" "not based upon legitimate inferences from the evidence."  (*People v. Kirkes* (1952) 39 Cal.2d 719, 723; *People v. Sandoval* (1992) 4 Cal.4th 155, 183.)  The prosecutor in this case suggested no such inside information; instead, she urged the jury to "listen to the facts" and to "read the law."  (*Pettie, supra,* 16 Cal.App.5th at p. 75 ["'No impermissible "vouching" occurs where "the prosecutor properly relie[s] on facts of record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief."'  [Citation.]"].)  We decline defendant's request that we entirely disregard, as a rhetorical device, the prosecutor's statements that the jury should independently look at the law and the facts.  This is not a case where the prosecutor repeatedly argued, "I could talk about X, but I won't" in order to get "X" before the jury; instead, the prosecutor argued that the jury's independent review of the facts and the law should lead it to reject defendant's argument in support of acquittal.

Third, defendant argues that a prosecutor may not tell a jury to "do its job"—or, in this case, to follow its oath.  Although other courts have condemned as misconduct a prosecutor's argument that the jury "do its job" (*United States v. Young* (1985) 470 U.S. 1, 18; *United States v. Ayala-Garcia* (1st Cir. 2009) 574 F.3d 5, 17-18; *Williams v. State* (Alaska 1990) 789 P.2d 365, 369), what renders that argument impermissible is the suggestion that its job is to find a defendant guilty irrespective of the evidence or the law.  For the reasons outlined above, the prosecutor in this case did not make that suggestion and, indeed, mentioned only the juror's *oath*, not "doing their job."  This was permissible.

(*Lucas*, *supra*, 12 Cal.4th at p. 475; *Harris*, *supra*, 219 Cal. at pp. 732-733.)

Lastly, defendant cites cases from several other federal and state jurisdictions decrying certain phrases as prosecutorial misconduct. These decisions are not binding on us (*People v. Cleveland* (2001) 25 Cal.4th 466, 480), and do not dictate a different result where, as here, the prosecutor's rebuttal argument as a whole does not constitute prosecutorial misconduct under California law.

## V.    Sentencing Errors

Defendant raises six errors with his sentence. These errors fall into three general categories.

### A.    *Use of post-offense sentencing law*

Defendant first asserts that the trial court made four errors by relying on statutes enacted *after* he committed the 1978 murder. In particular, defendant points to the court's (1) award of only *actual* presentence custody credits and refusal to award any conduct credits because current law limits conduct credits for persons convicted of murder (§§ 2933.1, subd. (d), 2933.2, subd. (d)); (2) imposition of a parole revocation fine of $10,000 because current law authorizes that fine (§ 1202.45, subd. (a)); (3) imposition of a restitution fine of $10,000 without a predicate finding of ability to pay because current law authorizes that fine without such a finding (§ 1202.4, subd. (b)); and (4) treatment of the current offense as "third strike" under our Three Strikes Law because current law would so authorize (§§ 1170.12 & 667). None of the statutes underlying these aspects of defendant's sentence were in effect in December 1978. (See § 2933.1 [operative in 1994]; 2933.2 [operative in 1997]; 1202.45, subd. (a) [operative in 1995]; 1202.4 [operative in 1984]; 1170.12 & 667 [operative in

1994].)  As the People concede, applying these punitive statutes retroactively to defendant would amount to an impermissible ex post facto application of additional punishment for his 1978 crime.  (*John L. v. Superior Court* (2004) 33 Cal.4th 158, 172 (*John L.*).)  The parole revocation fine is also improper because it is inapplicable when a defendant is convicted of life without the possibility of parole (and thus will never be paroled).  (*People v. Jenkins* (2006) 140 Cal.App.4th 805, 819.)

The remedy is to conform defendant's sentence to the law in effect in December 1978.  Because there was no parole revocation fine or Three Strikes Law on the books at that time, the court's imposition of that fine and its Three Strikes Law-related findings must be stricken.  Because the law at the time allowed for conduct credits at a rate of half of the actual custody time, the court must award defendant an additional 450 days (half of the 901 days of actual custody credits) of presentence custody credits, for a total of 1,351 days.  And because the law at the time allowed for a restitution fine if the defendant had the ability to pay (Gov. Code, § 13967), we vacate the restitution fine but remand for the court to consider the defendant's ability to pay that fine.

### B.     *Direct restitution*

Defendant next contends that the court erred in ordering him to pay restitution to the victim's family because the statute authorizing such direct restitution was not enacted until 1982 (§ 1202.4, subd. (f)), such that requiring him to pay direct restitution violates the ex post facto clause.  Ex post facto concerns do not preclude imposition of direct restitution because those concerns only apply to the retroactive imposition of *punishment* (*John L., supra*, 33 Cal.4th at p. 172) and "[v]ictim restitution is not punishment" (*People v. Kunitz* (2004) 122

Cal.App.4th 652, 657). Defendant cites *People v. Zito* (1992) 8 Cal.App.4th 736, 740-741, but *Zito* dealt with imposition of a restitution *fine*, not direct restitution paid to the victim or her family as a means of compensation. The fine is punishment; direct restitution is not. (*Kunitz*, at p. 657.)

### C. Franklin *hearing*

Defendant lastly argues that he is entitled to a remand so that he may present facts regarding his "diminished culpability" as a younger offender in anticipation of a "youth offender parole hearing" pursuant to section 3051. (See *People v. Franklin* (2016) 63 Cal.4th 261, 268-269, 283-284.) No remand is necessary, however, because section 3051 does not extend the right to a "youth offender parole hearing" to persons who are "sentenced to life in prison without the possibility of parole for a controlling offense that was committed after the person had attained 18 years of age." (§ 3051, subd. (h).) Because defendant was 21 at the time he murdered Long and because he was subsequently sentenced to life without the possibility of parole, he is not eligible for a "young offender parole hearing" and he is accordingly not entitled to a remand to obtain evidence for a hearing he will never receive.

**DISPOSITION**

The judgment is modified to reflect an award of presentence conduct credit of 450 days in addition to defendant's 901 days of actual credits for a total of 1,351 days. The case is remanded for resentencing to allow the trial court to (1) conduct a hearing to determine the defendant's ability to pay the restitution fine of $10,000 it previously imposed; (2) strike the parole revocation fine; and (3) strike the Three Strike findings. Upon resentencing, the trial court is directed to prepare an amended abstract of judgment and forward a certified copy of it to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

**CERTIFIED FOR PARTIAL PUBLICATION**


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

25